YELLOWSTONE PARK RAILROAD COMPANY, APPELLANT, v. BRIDGER COAL COMPANY ET AL., RESPONDENTS.

(No. 2,331.)

(Submitted November 12, 1906.   Decided December 8, 1906.)

*Eminent Domain—Condemnation Proceedings—Railroads—Appearance — Pleadings — Default — Presumptions —Counterclaims—Damages— Evidence—Instructions — Appeal — Excessive Verdicts—Review.*

Eminent Domain—Condemnation Proceedings—Appearance of Defendant—Failure—Effect.

1.   *Held,* that defendant in condemnation proceedings is required to appear, either by demurrer or answer; and if he fails so to do, he has no standing in court for any purpose and may not be heard in the subsequent proceedings, notwithstanding the provisions of section 2221 of the Code of Civil Procedure, that the commissioners appointed to assess the damages shall hear the allegations and evidence of all persons interested, this section having reference to cases where the parties defendant are not in default.

Same—Failure of Defendant to Plead—Effect—Duty of Court.

2.   Failure of defendant in condemnation proceedings to appear, either by demurrer or answer, does not relieve the court of the duty of determining whether the use for which the property sought to be condemned is a public use, limiting the amount taken to the necessities of the case and ascertaining the damages as provided in sections 2220, 2221 and 2224 of the Code of Civil Procedure.

Same—Failure of Plaintiff to Take Default—Effect—Presumptions.

3.   Where plaintiff railroad company in a condemnation proceeding failed to take default against defendants, who had not answered or demurred, but permitted the case to proceed as if pleadings had been filed and issues properly made, and found no fault with any of the proceedings until hearing in the district court, it will be presumed that issues were made and properly determined.

Same—Damages—Pleadings—Counterclaims—Statutes.

4.   Title VII, Part III of the Code of Civil Procedure does not require, either expressly or by implication, the defendant in. condemnation proceedings to set up his claims for damages, special or general, and section 691 of that Code will not permit their being pleaded by way of counterclaim; and, therefore, plaintiff railroad company cannot be heard to complain that, by defendant's failure to plead them, it had no notice of their character and amount and was deprived of an opportunity to controvert them.

Same—Measure of Damages—Elements of Value.

5.   In determining the amount of damages which defendants in condemnation proceedings for a railroad right of way are entitled to re-

cover, the court must take into consideration every element of value which would enter into the transaction if the parties plaintiff and defendant were negotiating a voluntary sale—i. e., ascertain the market value of the land after the right of way is taken.

Same—Damages to Lands not Taken—Pleadings—Evidence.

6. In the absence of statutory provision making it incumbent upon defendants in condemnation proceedings, instituted by a railroad company. for right of way purposes, to specially plead damages to portions of their lands not actually traversed by the road and not described in the petition, they were not required so to do, and evidence showing such damages was properly admissible.

Same—Lands in Compact Bodies—Damages to Those not Taken.

7. Where the lands over which a right of way was sought by a railroad company were all in a compact body, it was within the purview of the court's duty to ascertain what damages had accrued, not only to that portion described in the complaint, but also to the whole of the body, a part of which only is taken by the company.

Same—Lands not Taken—Damages not Special—Pleadings.

8. Damages accruing to portions of the land of defendant in condemnation proceedings, instituted by a railroad company to secure a right of way, not actually traversed by the road, are not special in the sense that they should be pleaded.

Same—Pleadings of Plaintiff—Estoppel.

9. A railroad company seeking to acquire a right of way, but failing in its petition to mention the land not taken or damages thereto, cannot be heard to say that the detriment to the part not described is special and must be pleaded before it can be shown in evidence.

Same—Evidence—Offers to Purchase—Hearsay.

10. Evidence offered by plaintiff railroad company in condemnation proceedings for the purpose of showing an increase in the value of land in a certain locality since the building of its road, that offers of purchase, indicating an enhancement in value, had been made for parcels of land in the vicinity of that sought to be condemned for a right of way, which offers arose out of negotiations between persons not parties to, or witnesses in, the proceedings, was not only hearsay and therefore properly excluded, but its value depended upon the determination of so many collateral issues that it could not be relied on with safety.

Appeal—Rulings in Appellant's Favor.

11. Appellant may not complain of a ruling in his favor.

Eminent Domain—Condemnation Proceedings—Damages and Benefits—Witnesses—Evidence—Harmless Error.

12. Where in proceedings to condemn a railroad right of way, the jury assessed the damages and benefits separately as required by statute, finding the items well within the extreme limits of the testimony adduced, the mere fact that certain witnesses were permitted to give their opinions as to damages sustained by defendants after deducting all benefits, and were not required to state the damages sustained and benefits derived by the building of the road separately, if error, was harmless, the witnesses having been questioned fully as to the basis. of their opinions, and the jury not having been misled.

Same—Setoffs.

13. *Quaere:* In an action in eminent domain to condemn land for a railroad right of way, may any increase in the market price of defendant's lands, by reason of the building of plaintiff's road, be set off against any damages accruing to portions not actually taken?

Appeal—Evidence—Admissibility—Objections.

14. Counsel of appellant may not complain in the supreme court of a ruling of the district court, with reference to the admission of evidence, on a ground the reverse of that assigned in the trial court.

Eminent Domain—Condemnation Proceedings—Instructions—Award of Commissioners—Evidence.

15. An instruction, given by the district court in a proceeding looking to the condemnation of land for a railroad right of way, that the jury in arriving at a verdict should not consider the award theretofore made by the commissioners appointed to assess the damages, but should confine themselves exclusively to the testimony of the witnesses examined at. the hearing before them, was a correct statement of the law, where the award formerly made by the commissioners had not been introduced in evidence and where the only reference made to it had been during the cross-examination of two of the commissioners, as to the amounts fixed by them in their award, which agreed with those fixed by them at the trial.

.Same—Verdict—Appeal—Review.

16. Where the evidence taken as a whole gave substantial support to the findings of the jury in favor of defendants in condemnation proceedings, their verdict will not be disturbed on appeal, although the statements of many of the witnesses were conflicting and unsatisfactory upon material points.

Same—Excessive Verdict—Review. .

17. Where the question, whether the lands not actually taken by a railroad company for a right of way, but adjoining it, had increased in value, had been agitated in proceedings in condemnation, the opinions of witnesses conflicting sharply as to the effect the building of the road had had on values along the line  of road, and had been fairly submitted to the jury, who found that there were no benefits, and where on motion for new trial their findings had been re-examined by the court and the motion denied, their verdict, though larger than the award made by the commissioners, but well within the highest estimate of any witness, will not be disturbed as being excessive.

Same—Findings of Jury—Excessive Verdict—Review.

18. Findings of the jury, in condemnation proceedings, with relation to the amount of damages sustained by defendants by the taking of a railroad right of way through their lands, complained of as excessive, will not be disturbed on appeal unless they are so obviously and palpably out of proportion to the injury done as to be in excess of the ''just compensation'' provided for by section 14, Article III of the Constitution.

*Appeal from District Court, Carbon County; Frank Henry, Judge.*

CONDEMNATION PROCEEDINGS by the Yellowstone Park Railroad Company against the Bridger Coal Company and others. From the judgment, and from an order denying a new trial to plaintiff, it appeals. Affirmed.

*Mr. W. M. Johnston,* for Appellant.

While the courts have held that no answer need be filed in order to enable defendant to offer evidence as to the value of the land taken, they have held that an answer is necessary, when defendant attempts to prove damages to lands not taken and particularly where he attempts to prove special damages. By special damages is ordinarily meant such damages as will not necessarily accrue to the part not taken; that is, such damages as are not open and apparent, damages which are not in contemplation when the action is filed. (*Fayetteville etc. Ry. Co.* v. *Hunt,* 51 Ark. 330, 11 S. W. 418; 15 Cyc. 860; *Moran* v. *Ross,* 79 Cal. 549, 21 Pac. 958; *Cincinnati etc. R. Co.* v. *McFarland,* 22 Ind. 459; *City of Alameda* v. *Cohen,* 133 Cal. 5, 65 Pac. 127; *Monterey Co.* v. *Cushing,* 83 Cal. 507, 23 Pac. 700; *San Diego etc. Town Co.* v. *Neale,* 88 Cal. 50, 11 L. R. A. 604, 25 Pac. 977.) Even where the defendant is not required to file an answer in order to recover the value of the land taken and ordinary damages to lands not taken but crossed by the railroad and described in the complaint, he is required to file an answer setting forth his claim for damages to any lands not crossed by the road but contiguous to his lands so crossed. (*Stetson* v. *Chicago etc. R. R. Co.,* 75 Ill. 74; *Chicago etc. Ry. Co.* v. *Hopkins,* 90 Ill. 316; *Johnson* v. *Freeport etc. Ry. Co.,* 111 Ill. 413; *Mix* v. *Lafayette etc. Ry. Co.,* 67 Ill. 319; *Ball* v. *Keokuk etc. Ry. Co.,* 71 Iowa, 306, 32 N. W. 354.)

Article III, section 14, and Article XV, section 9 of our Constitution provide that just compensation shall be made for property taken, but does not mention how benefits and damages are to be assessed. Section 2221, Code of Civil Procedure, provides how this shall be done. California has a statutory provision exactly like subdivision 3 of section 2221, Code of Civil Procedure. It has been held in California that "If the land be benefited by the making of the improvements," such benefits must be deducted from damages to the part not taken. (*Moran* v. *Ross,* 79 Cal. 549, 21 Pac. 958; *San Francisco etc. R. Co.* v. *Caldwell,* 31 Cal. 368; *California Pac. R. R. Co.* v. *Armstrong,*

46 Cal. 85, 15 Cyc. 765-768, and cases cited; *Beveridge* v. *Lewis,* 137 Cal. 619, 92 Am. St. Rep. 188, 59 L. R. A. 581, 67 Pac. 1040.)

While farmers are competent witnesses to testify as to value of lands in their neighborhood, they must base their testimony upon the selling or market price of lands and not upon any fictitious or speculative value. It must be fixed by what the lands would actually bring when the owner has reasonable time and opportunity to find a purchaser. (*Phillips* v. *Town of Scales Mound,* 195 Ill. 353, 63 N. E. 180; 2 Lewis on Eminent Domain, 1048; *Board* v. *Hendricks,* 77 Miss. 483, 27 South. 613; 1 Greenleaf on Evidence, 15th ed., 52, 86, note; *San Diego etc. Town Co.* v. *Neale, supra; Seattle M. R. Co.* v. *Roeder,* 30 Wash 244, 94 Am. St. Rep. 864, 70 Pac. 498.)

The damages awarded are clearly excessive, and the lands of defendants are beyond question benefited by the construction of plaintiff's road. "Juries have no right to disregard facts and follow their own caprices." The verdict is not only grossly unfair but given without reference to uncontradictory testimony. A new trial should have been granted. (*Grand Rapids etc. Ry. Co.* v. *Weiden,* 70 Mich. 390, 38 N. W. 294; *St. Louis etc. Ry. Co.* v. *Vaughan,* 71 Ark. 643, 72 S. W. 575; 1 Spelling on New Trial, secs. 236-238, 243; *White* v. *Beal etc. Grocer Co.,* 65 Ark. 278, 45 S. W. 1060; *Cleckley* v. *Beall,* 37 Ga. 607; *Wendel* v. *North,* 26 Wis. 379; *Ottomeyer* v. *Pritchett,* 178 Mo. 160, 77 S. W. 62; *Lawrence* v. *Wilson,* 86 App. Div. 472, 83 N. Y. Supp. 821; *Southern Ry. Co.* v. *Lollar,* 135 Ala. 375, 33 South. 32; *Western etc. Ry. Co.* v. *Hunt,* 116 Ga. 448, 42 S. E. 785.)

*Mr. Sydney Fox,* and *Mr. W. F. Meyer,* for Respondents.

Our statute does not provide for any pleadings other than the petition. Where the petition or complaint is sufficient and the question of damages the only question at issue, it is not necessary or proper that an answer should be filed. If, however, there is a dispute or denial of matter alleged in the petition, or some extrinsic fact which constitutes a bar to the proceed-

ings, objection may be made by plea, answer or demurrer to the petition. But in a case, such as the present, where there is no dispute as to the facts stated in the complaint, answer is not necessary. (2 Lewis on Eminent Domain, 390; *Smith* v. *Chicago etc. Ry. Co.,* 105 Ill. 511; *Denver etc. R. R. Co.* v. *Griffith,* 17 Colo. 598, 31 Pac. 171; *Seattle etc. R. R. Co.* v. *Murphine,* 4 Wash. 448, 30 Pac. 720; 15 Cyc. 860; *Sheldon* v. *Minneapolis etc. Ry. Co.,* 29 Minn. 318, 13 N. W. 134; 6 Am. & Eng. Ency. of Law, 611, and note; *Jefferson* v. *Hazeur,* 7 La. Ann. 182; *Ellsworth etc. Ry. Co.* v. *Maxwell,* 39 Kan. 651, 18 Pac. 819; *Bentonville R. R. Co.* v. *Strond,* 45 Ark. 278; *Johnson* v. *Freeport etc. Ry. Co.,* 111 Ill. 413.) In the case at bar the facts stated in the complaint were admitted by defendants. Where part of a tract or lot only is taken, a cross-petition is not necessary in order to obtain damages to the part not taken. (2 Lewis on Eminent Domain, sec. 360, and citations under notes 66 and 67; *Northern Pac. R. R. Co.* v. *Reynolds,* 50 Cal. 90; *San Jose* v. *Freyschlag,* 56 Cal. 8; *Kansas City etc. Ry. Co.* v. *Littler,* 70 Kan. 556, 79 Pac. 114.)

On the question of general or special benefits, see 2 Lewis on Eminent Domain, secs. 471, 471a; 15 Cyc. 770, sec. A, subd. E; *Kaufman* v. *Tacoma R. R. Co.,* 11 Wash. 632, 40 Pac. 137; *Seattle etc. R. R. Co.* v. *Roeder,* 30 Wash. 244, 94 Am. St. Rep. 864, 70 Pac. 502.

The question of the weight of evidence is for the jury, and having determined it, appellate courts will not disturb the finding unless it is not supported by the proof. (*St. Louis etc. R. R. Co.* v. *Terhune,* 50 Ill. 150, 99 Am. Dec. 504; *Inhabitants of Redfield* v. *Shaver,* 50 Me. 36, 79 Am. Dec. 592; *Donaldson* v. *Mississippi Co. etc.,* 18 Iowa, 280, 87 Am. Dec. 391; *Ophir etc. Min. Co.* v. *Carpenter,* 4 Nev. 534, 97 Am. Dec. 550; *State* v. *Yellowjacket etc. Co.,* 3 Nev. 38; *Wooten* v. *Wilkins,* 39 Ga. 223, 99 Am. Dec. 456; *Bruce* v. *Crews,* 39 Ga. 544, 99 Am. Dec. 467.) Appellate courts will not disturb verdict on ground of insufficiency of evidence when there is evidence tending to support it. (*Roper* v. *Clay,* 18 Mo. 383, 59 Am. Dec. 314; *Baker* v.

*Clipper,* 26 Tex. 629, 84 Am. Dec. 591; *Johnson* v. *Winona etc. R. R. Co.,* 11 Minn. 296, 83 Am. Dec. 83; *Keene* v. *Cannovan,* 21 Cal. 271, 82 Am. Dec. 738; *Graham* v. *State,* 7 Ind. 470, 65 Am. Dec. 745.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Proceeding under the statute (Code Civ. Proc., Part III, Title VII, secs. 2216 et seq.), to condemn lands owned by defendants by separate rights, for the use of plaintiff as a right of way. The lands are all used for agricultural and stock-raising purposes. Those owned by defendant Hanson and wife consist of one hundred and sixty acres in a square body. Two forty-acre subdivisions are cut in two diagonally by the line of road from northeast to southwest. The area taken covers three and fifty-eight hundredths acres. The defendant Kuecking has one hundred and fifty-one and one-half acres in a compact body nearly square. The right of way runs through it in the same direction, cutting diagonally three forty-acre subdivisions, taking an area of three and six-tenths acres. The defendants Clark own three hundred and five acres in one compact body. The right of way runs into this tract from the north near the middle of one forty-acre subdivision and passes through it on a curve to the southwest to a point near the line of the western tier of forties on the south line of this forty, and thence due south, cutting two other forty's from north to south, and takes an area of six and three hundred and forty-five thousandths acres. The defendants Dew and wife own one hundred and sixty acres in a parallelogram extending north and south. The right of way runs through them from northeast to southwest on a wide curve, cutting three of the forty-acre subdivisions and taking five and forty-seven hundredths acres. All of these lands lie adjoining in the order named, along Clark's Fork river in Carbon county. Considerable areas of all of them are cultivable and produce grain and alfalfa hay. On the Clark lands is an orchard of thirty acres. The line of road over most of the way

through them is upon areas usually cultivated. The Clarks are also engaged in sheep raising and use their place as a home ranch. The Hanson and Kuecking lands are almost all cultivated. All of the defendants have water rights, and the taking of the right of way disturbs in a greater or less measure the ditches of the respective owners, and will entail additional labor and expense in changing them as well as the secondary ditches and laterals.

All of the defendants appeared in obedience to the summons issued, except the Bridger Coal Company—as to which, because of an adjustment made by it with plaintiff before the hearing in the district court, the proceeding was dismissed—but filed no answers or other pleadings. The hearing was had and the order of condemnation was made as if issue had been joined by defendants. The commissioners appointed in pursuance of the statute to assess the damages (Code Civ. Proc., sec. 2220), did so after a hearing and examination of the lands, and made their report. The plaintiff, being dissatisfied with the award, appealed to the district court. (Code Civ. Proc., sec. 2224.) Thereafter, upon a trial, a jury returned a verdict awarding damages as follows: To defendants Hanson, for land taken, $214.80, and incidental damages, $725; to Kuecking, for land taken, $216, incidental damages, $725; to Clark and wife, for land taken, $285.52, incidental damages, $1,500; and to Dew and wife, for land taken, $328.20, incidental damages, $1,295. The jury found that there were no benefits to any of the lands. From the judgment entered upon the verdict and from an order denying a new trial, plaintiff has appealed.

1. At the beginning of the trial, the defendants having assumed the burden of proof, the plaintiff objected to the introduction of any evidence by them "for the reason that no answer, counterclaim or any kind of a claim in damages has been filed in this action." The objection was overruled and plaintiff assigns error.

It is the rule in many of the states that the defendant in condemnation proceedings is not required to make formal ap-

pearance either by answer or otherwise. The complaint is treated as denied, and the hearing proceeds as if formal issue had been made. This is the rule in Minnesota, Illinois, North Carolina, Iowa, and Arkansas. (*Sheldon* v. *Minnesota etc. Ry. Co.*, 29 Minn. 318, 13 N. W. 134; *Smith* v. *Chicago etc. Ry. Co.*, 105 Ill. 511; *Carolina etc. R. R. Co.* v. *Love*, 81 N. C. 434; *Corbin* v. *Wisconsin etc. Ry. Co.*, 66 Iowa, 269, 23 N. W. 662; *Bentonville R. R.* v. *Stroud*, 45 Ark. 278.) It was formerly the rule in Colorado (*Denver etc. R. R. Co.* v. *Griffith*, 17 Colo. 598, 31 Pac. 171), but it seems that the rule has been changed by a later statute. (*Whitehead* v. *Denver*, 13 Colo. App. 134, 56 Pac. 913.)

The procedure in such cases is regulated by the statutes of the particular states, and decisions made under them are generally of little aid in the interpretation of our own statute. In such proceedings the court acquires jurisdiction of the subject matter and the parties by the filing of the complaint in conformity with the requirements of section 2217, and the issuance and service of summons as directed by section 2218. The latter section provides: "The clerk must issue a summons which must contain the names of the parties, a description of the lands proposed to be taken, a statement of the public use for which it is sought, and a notice to the defendants to appear before the court or judge, at a time and place therein specified, and show cause why the property described should not be condemned as prayed for in the complaint. Such summons must, in other particulars, be in form of a summons in a civil action, and must be served in like manner upon each defendant named therein at least ten days previous to the time designated in such notice, for the hearing, and no copy of the complaint need be served. But the failure to make such service upon a defendant does not affect the right to proceed against any or all other of the defendants, upon whom service of summons had been made."

Sections 2219 and 2231 provide:

"Sec. 2219. All persons named in the complaint, in occupation of, or claiming an interest in, any of the property described in the complaint, or in the damages, for the taking thereof, though not named, may appear, answer or demur, each in respect to his own property or interest."

"Sec. 2231. Except as otherwise provided in this Title, the provisions of Part II, of this Code, are applicable to and constitute the rules of practice in the proceedings mentioned in this Title."

While sections 2218 and 2219, *supra,* do not require, but permit, an answer to be filed, yet, since section 2231 declares that the provisions of Part II of the Code of Civil Procedure shall, except where otherwise provided, be applicable and constitute the rules of practice in the proceedings mentioned in this Title, it must follow that an appearance, either by demurrer or answer, must be made by the defendants in order to give them any standing in court for any purpose; for section 632, Part II, declares what the summons must contain, in addition to what is required by section 2218, *supra.* Among other things, it must contain a notice that, if the defendant fails to appear or answer, judgment will be taken against him by default for the relief demanded in the complaint. Section 1020 declares that judgment may be had if the defendant fails to answer: (1) In actions arising on a contract, by the clerk upon entry of default; (2) upon a hearing, by the court after the entry of default by the clerk; and (3) in a case where service of summons has been had by publication, upon a hearing by the court after proof of the required publication. Construing these provisions together, it is apparent that the defendant is required to appear and make his defense as in ordinary actions. And, if he fails to appear and save default by one of the modes provided, he has no right to be heard in the subsequent proceedings. This is so notwithstanding the provision of section 2221, which requires the commissioners appointed to assess the damages, to hear the allegations and evidence of all persons interested.

The latter provision evidently contemplates cases where the parties defendant are not in default, for, if they must, notwithstanding their default, be heard by the commissioners, they may appeal (section 2224) and still have a jury trial as to the amount of damages—a situation which, in view of the provisions applicable to ordinary actions, would be absurd.

But this conclusion does not involve the idea that the court is not bound to proceed in conformity with the other requirements of this Title in the performance of its duties. The only effect of a default is to shut out the defendants from participating in the proceedings. The court must, nevertheless, determine whether the use for which the property is sought to be appropriated is a public use, limit the amount taken to the necessities of the case, and ascertain the damages under the procedure and in accordance with the standard provided therefor in sections 2220, 2221, and 2224.

But, while this is true, the plaintiff in this case may not now be heard to say that he has been prejudiced by the ruling complained of. It failed to take default against the defendants. They were permitted to appear at the hearing when the order of condemnation was made, plaintiff's counsel thinking, doubtless, that they were not required to file any pleading. No fault was found with any of the proceedings until the opening of the trial on appeal. Upon inspection of section 2217, *supra*, it will be seen what issues may be made and tried upon the pleadings. The case having proceeded to the making of the order of condemnation without objection, as if issues had properly been made, it must be presumed that they were made, and, since there is no complaint of any error in regard to them, it must be presumed that they were properly determined.

But counsel says that the defendants' claims for damages should have been set up in their answers by way of counterclaim, thus giving plaintiff notice of their character and amount, so that it could be prepared to meet them. The answer to this contention is that there is no provision in the Title touching condemnation proceedings, requiring defendants to set up their

claims for damages in their pleadings in any form. And when we examine the provisions of Part II relating to the forms of pleadings and declaring what may be set up as counterclaims, we find that they clearly exclude damages awarded in such cases. The counterclaim permitted by section 691 must tend in some way to diminish or defeat the plaintiff's recovery, and must be one of a designated class of causes of action against the plaintiff, or, in a proper case, against the person whom he represents, and in favor of the defendant or of one or more defendants between whom and plaintiff a separate judgment may be had in the action. It must also be matured and exist at the time the action is brought.

When this proceeding was commenced, the defendants had no cause of action against the plaintiff, and a recovery of the damages to which they are entitled tends in no way to defeat plaintiff's right to have the land condemned for a roadbed, whatever may be the amount of recovery. Indeed, the purpose of the whole proceeding is to .enforce the sale of a portion of defendants' lands to plaintiff, to ascertain the damages—the purchase price—and to compel payment of them. And, since the statute does not require, either expressly or by implication, that the defendants must plead their damages or present any other issues than those which go to the truth of the petition itself, they may not be required to do so, no matter whether the damages are general or special, and, in determining the amount which they are entitled to recover; the court is bound to take into consideration every element of value which would be taken into consideration if the plaintiff were negotiating a sale with the defendants as a willing purchaser and the defendants were willing sellers. (*Boom Co. v. Patterson,* 98 U. S. 403, 25 L. Ed. 206; *Webster* v. *Kansas City etc. Ry. Co.,* 116 Mo. 114, 22 S. W. 474; *Denver etc. R. R. Co.* v. *Griffith, supra.*) In other words, it must ascertain the market value of the lands after the right of way is taken.

2. Objection was made to certain evidence tending to show damage to portions of defendants' lands not actually traversed

by the railroad and not described in the petition. It is said now that the claims for damages in this behalf should have been specially pleaded, and plaintiff cites several Illinois cases in support of his contention; among them, *Stetson* v. *Chicago etc. R. Co.,* 75 Ill. 74; *Chicago etc. R. Co.* v. *Hopkins,* 90 Ill. 316; *Johnson* v. *Freeport etc. Ry. Co.,* 111 Ill. 413. It will be seen on examination of these cases, however, that the Illinois statute permits the defendant in such cases to file a cross-petition in order to set forth more fully and accurately his claim. But our statute contains no such provision. Besides, as we have seen, the lands of the different defendants in this case are all compact bodies, and it is clearly within the purview of the court's duty to ascertain what damages have accrued, not only as to the part described in the complaint, but also to the whole of the body, a part of which only is taken. Such damages are not special in the proper meaning of that term. (*North Pac. R. Co.* v. *Reynolds,* 50 Cal. 90; *Sheldon* v. *Minnesota etc. R. Co., supra; Sherwood* v. *St. Paul etc. R. Co.,* 21 Minn. 122; *Fayetteville etc. Ry. Co.* v. *Hunt,* 51 Ark. 330, 11 S. W. 418.) The plaintiff should not, after describing only so much of the entire tract as suits its convenience, be heard to say that the detriment to the part not described is special and must be pleaded by the defendants in order to make it incumbent upon the commissioners or the court to consider defendants' claims.

3. The plaintiff, for the purpose of showing that all the lands along Clark's Fork river had been enhanced in value by the building of the road, tendered evidence to prove that offers had been made by various persons to the owners of selected parcels of land in the vicinity of the lands of defendants of one hundred dollars per acre. All these offers but one, which will be hereafter noticed, arose out of negotiations between persons none of whom are parties to this proceeding or were witnesses on the trial. The evidence having been excluded, counsel for plaintiff insists that the ruling was erroneous. There is no merit in this contention. The offer was an attempt to get

before the jury hearsay declarations of third parties as to value not supported by oath, without the right of cross-examination by the defendants. The right mode of proving value is to take the sworn opinions of those who are shown to be competent to give opinions on the subject, and let them be cross-examined as to the foundation of their opinions, their means of knowledge and the motives prompting them. Furthermore, the value of such evidence depends upon the determination of so many collateral issues that it cannot be relied on with safety. With reference to it the supreme court of New York has well said:

"Its value depends upon too many circumstances. If evidence of offers is to be received it will be important to know whether the offer was made in good faith, by a man of good judgment, acquainted with the value of the article and of sufficient ability to pay; also whether the offer was cash, for credit, in exchange. and whether made with reference to the market value of the article, or to supply a particular need or to gratify a fancy. Private offers can be multiplied to any extent for the purposes of a cause, and the bad faith in which they were made would be difficult to prove. The reception of evidence of private offers to sell or purchase stands upon an entirely different footing from evidence of actual sales between individuals or by public auction, and also upon a different footing from bids made at auction sales. (*Young* v. *Atwood*, 5 Hun, 234.) The reception of this class of evidence would multiply the issues upon questions of damages to an extent not to be tolerated by courts aiming to practically administer justice between litigants." (*Keller* v. *Paine*, 34 Hun, 177.)

In *Hine* v. *Manhattan Ry. Co.*, 132 N. Y. 477, 30 N. E. 985, 15 L. R. A. 591, the inquiry was: What was the market value of the premises in controversy prior to the building of the defendant's railroad? On the trial in the lower court evidence of offers made to the owner had been received. The appellate court held this error, on the ground that it was objectionable as hearsay, and on the further ground stated by the supreme court in *Keller* v. *Paine, supra*. On both the grounds we think the

evidence was properly excluded. The rule stated in these cases has been followed quite generally by the courts, whether the particular offer was made to third persons for other lands in the vicinity or to a party for the lands in question, either by third persons or the condemning party. (*Chicago etc. R. Co.* v. *Muller,* 45 Kan. 85, 25 Pac. 210; *Winnisimmet Co.* v. *Grueby,* 111 Mass. 543; *Davis* v. *Charles River Branch R. Co.,* 11 Cush. (Mass.) 506; *Selma etc. Ry. Co.* v. *Keith,* 53 Ga. 178; *Parke* v. *Seattle,* 8 Wash. 78, 35 Pac. 594; *Lehmicke* v. *St. Paul etc. R. Co.,* 19 Minn. 464 (Gil. 406); *Concord R. Co.* v. *Greely,* 23 N. H. 237; *Watson* v. *Milwaukee etc. Ry. Co.,* 57 Wis. 332, 15 N. W. 468; 2 Lewis on Eminent Domain, 446.)

The other offer referred to above was made to defendant Clark himself of forty dollars per acre of all the land owned by himself and wife, which Clark signified his willingness to accept. This evidence was admitted without objection. Under the circumstances plaintiff cannot complain, for, whether right or wrong, the ruling of the court was in its favor.

4. In assignments 8, 10, 11, 12, 13, and 14 error is alleged in that the court permitted different witnesses to give their opinions as to the damage sustained by the defendants to lands not taken, after deducting all benefits. The argument is that, since the statute (Code Civ. Proc., secs. 2221, 2224) requires the commissioners in the first instance to assess the damages and benefits separately, the witnesses should have been required to state the damages and benefits separately, and, since this was not done, the evidence confused rather than aided the jury.

There is much conflict in the decisions of the courts as to whether a witness should be allowed to state his opinion as to the amount of damages or benefits accruing to the defendant in condemnation proceedings. The cases are collected in the footnotes to section 476 of Mr. Lewis' work on Eminent Domain. The conflict of opinion, however, seems more apparent than real, for in all the states the opinions of witnesses must be resorted to to determine (1) the value of the land taken; (2) the detriment, if any, to the portion not taken, or, in other words, the value of

that not taken; and (3) the benefits, if any, to the portion not taken. If the witnesses state the items separately, it requires only an arithmetical calculation to reach a determination of the net result. Does it really matter whether this is done by the witnesses or by the jury? When the witness has stated the facts upon which his opinion is based—thus furnishing the jury the means of judging of its trustworthiness—the mental process necessary to arrive at the net result may as well be that of the witness as of the jury. In effect, the expression of opinion as to the items of value is an expression of opinion as to the net result.

After commenting on the diversity of opinion on this subject, Mr. Lewis says: "The law is supposed to discourage all indirect and circuitous methods. Why a witness should not be allowed to state at once and directly his opinion of the amount of damages or benefits in answer to a single question, instead of stating it indirectly in answer to two questions, we are unable to perceive. The distinction attempted to be maintained between the two methods is without any substantial difference and must eventually be abandoned." (2 Lewis on Eminent Domain, sec. 436.)

In this case the witnesses were questioned fully as to the bases of their opinions. The jury, under the instructions of the court, assessed the damages as required by the statute, finding the items well within the extreme limits of the testimony. Even if, therefore, it be conceded that the questions were not technically correct in form, we do not see how any prejudice was suffered.

5. On redirect examination the following question was asked one of the defendants' witnesses: "I will ask you if Mr. Dew's land has increased in value to any greater extent than any other lands of similar character and quality of his in the Clark's Fork valley since the building of the railroad?" An objection that this was immaterial testimony and was not proper re-examination was overruled, whereupon the witness answered that it had not. While this ruling is assigned as error, the argument in the brief is devoted to the question whether or not an increase in the market price of defendants' lands, generally or specially, by

reason of the building of the road should not be set off against any damages accruing to the portion not taken, counsel arguing that the setoff should be allowed.   Whether the question presented by counsel should be resolved in favor of plaintiff we need not now decide.   If the setoff should be allowed, the evidence was material, for, if the plaintiff had a right to a setoff on account of the alleged enhancement of value, the defendants had the right to show that there was none.   The argument of counsel tends to support the view that it was material.   Evidently the court thought that it was, for the instructions submitted to the jury were formulated on the theory that credit should be allowed for such benefits.   In any event, counsel has assumed a position in this court which does not entitle him to complain, because it is exactly the reverse of the position which he assumed in the district court.

6. Complaint is made that the instructions were not sufficiently specific in laying down the rule to be pursued by the jury in assessing the damages.   Considering the charge as a whole, it was as fair as the plaintiff could ask.   That the jury were not misled is clear from the fact that they followed the rule laid down in the statute, finding separately upon the different items of damages and benefits as is therein prescribed.   While paragraph 21, of which particular mention is made, might have been stated with more clearness, it follows the statute in substance and is correct.

Criticism is made of paragraph 24 of the charge, because the court therein told the jury that they must not consider the award theretofore made by the commissioners, but should confine themselves exclusively to the testimony of the witnesses examined at the hearing.   This was clearly correct for the reason that the award was not introduced in evidence.   The only reference to it was made during the cross-examination of two of the commissioners who were sworn as witnesses at the trial.   Being asked as to the amounts fixed by them in their award, they stated amounts which agreed with those fixed by them at the trial. The trial was *de novo* as to the damages.   **T**he award of the com-

missioners could not be competent for any purpose, except to impeach the statements of those commissioners who were sworn as witnesses, in case their opinions expressed at the trial differed from their findings. The caution contained in this paragraph was perhaps not necessary, but it is not erroneous.

7. It is said that the evidence is not sufficient to sustain the verdict. It would be a bootless task to take up and analyze the evidence and undertake to reconcile the statements of the various witnesses. Most of them were practical farmers and business men who knew the lands in controversy, and, while their statements are conflicting and unsatisfactory upon material points, we cannot say that the evidence all together does not give substantial support to the findings of the jury. That this court must, under these circumstances, accept them as final is too well settled to permit further discussion.

8. Finally, it is said that the award of the jury for damages to the lands not taken is excessive, as is apparent from the fact that the evidence conclusively shows that the lands of all the defendants have been increased in value by the building of the road, because it not only furnishes easier access to market, but also, for the same reason, it makes them available for other products for which until the road was built there was no market. This matter was agitated at the trial, and there was a sharp conflict in the opinions of the witnesses as to what effect upon the value of the lands along the line of road and in the community generally the building of the road has had. The question was fairly submitted to the jury. They found that there were no benefits. Their findings were re-examined by the court upon the motion for a new trial. While the verdict is, in case of each defendant, for a larger sum than the amount awarded by the commissioners, the jury might have found a larger amount and still kept well below the highest estimate of any witness. The fact that they found that there were no benefits, though some of the witnesses were of a contrary opinion, does not of itself conclusively show that they were controlled by sentiments of passion and prejudice. It merely shows that they regarded the

opinions of the defendant's witnesses as more trustworthy than those of plaintiff.

It may be conceded that the building of the road has improved market facilities for all the defendants. Yet this does not necessarily compel the conclusion that the market value of their lands has been appreciably enhanced, even though it should be accepted as the correct doctrine that such enhancement of value may be offset against the damages. The real inquiry is "whether the verdict is fair and reasonable, and in the exercise of sound discretion, under all the circumstances of the case, and it will be so presumed, unless the verdict is so excessive or outrageous with reference to those circumstances as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them." (13 Cyc. 122.)

Upon the evidence before us we cannot say that the findings of the jury in the particulars referred to are so obviously and palpably out of proportion to the injury done the defendants as to be in excess of what is meant by the expression "just compensation" as used in the Constitution.

The plaintiff has, we think, had a fair trial and the judgment and order must be affirmed.

*Affirmed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.