SMITH, Appellant, *v.* ARMSTRONG, Respondent.
No. 8780.
Submitted April 7, 1948. Decided May 10, 1948.
198 Pac. (2d) 795.

Mr. S. J. Rigney, of Cut Bank, for appellant. Mr. Rigney argued the cause orally.

Messrs. Murrills & Frisbee, of Cut Bank, and Mr. W. R. McDonald, of Browning, for respondents. Mr. S. J. Rigney and Mr. Selden S. Frisbee argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action in conversion to recover the value of 26 horses alleged to belong to plaintiff and which the complaint alleges were converted by the defendant on the 16th day of August 1940.

The answer consisted of a general denial and two affirmative defenses. The first affirmative defense alleges that the horses described in the complaint did not belong to plaintiff but were the property of J. J. Galbreath and his three sons, J. W., Galen and Kenneth. The second affirmative defense consisted of a plea of estoppel but this was, on motion of defendant, stricken from the answer at the time of the trial.

The Sherburne Mercantile Company and R. B. Fraser had filed a complaint in intervention upon leave of court granted but this too was dismissed by them before the trial.

The cause was tried to the court sitting with a jury, resulting in a verdict for the defendant. There was submitted to the jury a special verdict and in consequence the jury returned two verdicts, one general and the other reading as follows: "We, the

jury in the above entitled action, find the value of the gelding referred to in the testimony in the above action as branded with 'EL' brand as being $65.00.''

Plaintiff filed a motion for new trial which was granted ''unless the defendant shall within two days after notice hereof consent to the entry of judgment against him for the sum of $65, being the value of a gelding branded EL and referred to in the testimony, which value is fixed by the court and was also fixed in the same amount in a special finding before the jury. It is further ordered that if defendant shall file his written consent to such entry of judgment with the clerk of the above entitled court within two days after notice hereof, that said motion for new trial shall be and is denied. That if said consent is not filed within such time said motion shall be, and is, granted.'' Consent was filed by defendant.

The order also specifically found that there is insufficient evidence regarding the gelding to justify a verdict for the defendant and that a verdict for defendant as to the gelding was against law. The only judgment entered in the case was one in favor of the defendant for costs which was entered on April 8, 1947. The plaintiff has appealed from that judgment.

This is the second appeal in the case, the jury having found for defendant on the first trial also. Smith v. Armstrong, Mont., 166 Pac. (2d) 793.

Defendant has filed a motion to dismiss this appeal upon the ground that the appeal is premature in that no judgment has yet been entered pursuant to the court's ruling upon the motion for new trial. Defendant takes the view that the judgment of April 8, 1947, is no longer in effect and that the attempted appeal therefrom is abortive, that plaintiff's remedy was to have a proper judgment entered pursuant to the order on the motion for new trial and then to appeal from that judgment. Defendant relies upon the case of Lappin v. Martin, 71 Mont. 233, 228 Pac. 763, 767, where a similar situation obtained. In that case defendant had a judgment in his favor in the sum of $286.32 and costs of suit. The lower court in ruling upon the motion for new

trial did so in the following language: "It * * * is hereby over-ruled on the following conditions, to-wit: that the plaintiff remit $15 of the judgment herein. Should the plaintiff, or his attorney, on or before fifteen days from this date, file a written consent to the remission of $15 of said judgment, said motion for new trial shall be deemed denied. Should he fail to file said written consent within said fifteen days, the said motion shall be deemed granted and allowed."

The court pointed out that the plaintiff filed a written consent to the reduction of the judgment in the sum of $15. The defendant in that case appealed (1) from the original judgment, (2) from the judgment as modified by the order made on motion for new trial, and (3) from the order overruling the motion for new trial.

The court in holding that the original judgment had become ineffective said: "After the modification of the original judgment dated November 24, 1922, by the order of the court dated January 5, 1923, and the acceptance of such modification by the plaintiff, said original judgment became ineffective, and was merged in the judgment as modified by the last-mentioned order and acceptance; therefore, the appeal from said first-mentioned judgment is dismissed, and the appeal stands from the judgment as modified by the order of January 5, 1923, upon which appeal all questions touching the propriety of the order of the court overruling the motion for a new trial, on the conditions named therein, have been considered by us as authorized by section 9745, supra [Rev. Codes of 1921]."

The Supreme Court of California has had the same question before it. In Taber v. Bailey, 22 Cal. App. 617, 135 Pac. 975, 979, the order on the motion for new trial entered on February 19, 1912, was as follows: "In this matter, it is ordered that, in the event that plaintiffs within 20 days from this date (February 19, 1912) file in this court their consent that the judgment herein be modified by the insertion of the words following the word 'plaintiff' line 26, 'upon the payment to said defendant by said plaintiffs of the sum of $202.22,' or words to that effect,

the judgment be modified accordingly, and the motion for a new trial shall be denied; but should the plaintiffs fail to file such consent within such time, then the motion for a new trial shall be granted. Such consent shall also include the matter of insertion of a proper finding.''

The consent was filed two days later, which the court pointed out had the effect of denying the motion for new trial. In discussing the motion to dismiss the appeal the court said: ''There is also an attempted appeal 'from the judgment and decree as amended and entered in the above-entitled action on or about March 11, 1912.' But no amended judgment was ever made by the court or entered in its records. The order made, March 11, 1912, was as follows: 'In this matter the plaintiffs having filed their consent to the modification and amendment of the findings and judgment in accordance with the order of the court heretofore made, it is hereby ordered that the motion of the defendant for a new trial be and the same is hereby denied.'

''Where the judgment is modified the appeal is properly taken from the modified judgment as entered. In re Estate of Potter, 141 Cal. [424], 425, 75 Pac. 850.

''But, as it was not actually made or entered therein, the appeal was premature.''

In California Machinery & Supply Co. v. University City Syndicate, 3 Cal. App. (2d) 425, 39 Pac. (2d) 853, the court held that where the second judgment entered after proceedings on motion for new trial is a material departure from the judgment first entered, an appeal lies from the second judgment.

The judgment from which the appeal was taken in the case ██ before us has become ineffectual because of the order made on motion for new trial and if plaintiff would appeal from the judgment as ordered modified on motion for new trial he must first have such modified judgment entered.

Since that was not done the attempted appeal from the judgment of April 8, 1947, might properly be held to be ineffectual and the motion to dismiss the appeal properly could be sustained.

But if we pass that point unnoticed, or consider the order on

motion for new trial and the consent as an automatic amendment of the judgment, and look to the merits of the case, we would still be obliged to leave plaintiff where he now finds himself.

He contends that the evidence does not justify the verdict and judgment. The record consists of more than 500 typewritten pages. On the vital points in the case there is a conflict in the evidence. We shall not attempt to review all the evidence.

In general the record shows that the Galbreaths in May 1940 executed a mortgage on 200 head of horses to the Sherburne Mercantile Company and R. B. Fraser. Some of the horses were not then branded and pursuant to arrangement between the mercantile company and the Galbreaths, Lou Oliver, an employee of the mercantile company, went to the Galbreath ranch situated north of Browning and with the assistance of the Galbreath boys branded some of the horses intended to be included in the mortgage by placing the Sherburne Mercantile brand on them, which brand was assigned by one of the Galbreaths to the mercantile company, being an X Lazy Y on the right thigh. Oliver testified that he branded those only which the Galbreath boys said were Galbreath horses, but the Galbreath boys testified that some of the horses then branded belonged to Smith, the plaintiff here, and that Oliver was so advised by them. This Oliver denied.

Smith testified that he brought a number of horses from Canada and kept them at the Galbreath ranch; that all but 14 head were sold. The mares were bred and produced colts in 1937 and 1939. Eight of these 14 head he said were seized by defendant and are involved in this action. Three of these were chestnut mares, all branded with a bar over an X on the left jaw and two of these were branded with a Half Diamond Pick on the left thigh; the other chestnut mare carried two other brands, an X Lazy Y on the right thigh and a Double Half Circle on right shoulder; there was one bay mare branded Bar Over X on left jaw and Half Diamond Pick on the left thigh and a brown mare with the same brands. There were two brown geldings both branded X Lazy Y on the left thigh and one

branded Bar Over X on the left jaw and a bay gelding branded EL on the left thigh. The other horses involved in the action were all young horses all branded X Lazy Y—eighteen in number.

Smith testified that he could not identify the younger horses which were sired and foaled at the Galbreath ranch, but could identify the older horses which were brought from Canada. The last time that he saw all of the horses was in December 1939 at the Galbreath ranch. He saw part of them in April or May 1940. The defendant seized a group of horses in August 1940 at the Galbreath ranch. They were placed in a pasture at the Galbreath ranch and placed in charge of a keeper. They were held there until in February 1941 when they were moved to Blackfoot and placed in a corral. From there they were taken to a ranch known as the Williamson ranch near Browning where they remained until March 4th when they were taken to Browning and sold. Plaintiff testified that all of his horses were branded with a bar over an X except one four-year old brown gelding which had the brand X Lazy Y and the bay gelding branded EL. In this he was corroborated by J. W. Galbreath.

Without reciting all the evidence offered by plaintiff it is ▮ sufficient to say that it made out a prima facie case that Smith was the owner of the horses described in the complaint and that they were converted and sold by defendant sheriff as alleged. Since the jury found for defendant our province is to ascertain whether there is substantial evidence refuting that offered in behalf of plaintiff to justify the verdict. If the evidence were conflicting then we will not interfere with the jury's verdict.

On behalf of defendant there was evidence that while the horses were held at the Galbreath ranch from August 1940 to February 1941, the Galbreaths prosecuted an action to restrain the sale of the horses in question upon the ground that the mortgage had been paid. In that action they claimed to be the owner of the horses held by the keeper in the Galbreath field. Before the horses were moved from the Galbreath field to Blackfoot

they were checked for brands and the Galbreaths selected about 10 or 15 head which did not carry any brand mentioned in the mortgage and they were released. At Blackfoot they were run through a chute one at a time and checked for brands, Oliver checking one side and deputy sheriff Brown the other, and a tally list of the horses was made out with the brands on each and each was numbered from 1 to 103 with white paint. The list did not show any horses carrying the Bar X brand on the left jaw but did show some branded Lazy H X on the left jaw, which is the brand of Nedra Galbreath Reagan.

In this respect the check made by the stock inspectors after the sale corresponded with the check made by Oliver and Brown, except that there was error as to two horses not material here.

The record shows that on February 16th Jesse Brown and Lou Oliver gathered 24 more horses from the vicinity of the Galbreath ranch and took them to the Williamson field. On February 24th they gathered up nine more head. Of these Oliver made a tally describing the markings, brands and colors and it contains no horses branded Bax X on the left jaw and Half Diamond Pick but does show two branded Lazy H X on the left jaw.

Hence the defendant's evidence discloses that there were no horses sold bearing the brand Bar X on the left jaw as described in plaintiff's complaint. This evidence presented a question for the jury as to the horses alleged in the complaint and shown by the plaintiff's evidence to bear the Bar X brand on the left jaw.

The evidence was sufficient to justify a finding by the jury that no horses were sold bearing the Bar X brand on the left jaw. This accounts for all the old horses claimed in the complaint, except as to the one being branded EL which was cared for by the special verdict. While one seven-year old brown mare is described in the complaint as having the brand Half Diamond Pick on the left thigh without mention of a Bar X brand on the left jaw, plaintiff's evidence was to the effect that it had a Bar X brand on the left jaw. As to the young horses, plaintiff could not identify any of them as his. The Galbreaths, it is true,

testified that they belonged to plaintiff but as above indicated their evidence was impeached by the evidence that they claimed to own the horses held by the sheriff in their action to restrain the sale. Likewise most of the young horses were claimed to be offspring of the old horses sold which we have held the jury was warranted in finding were not horses belonging to plaintiff.

While we have not alluded to all of the evidence in the case, we find there was ample evidence to warrant the jury's verdict and hence we will not interfere with their determination upon conflicting evidence.

Error is assigned by plaintiff in excluding J. J. Galbreath from the courtroom in the court's order excluding witnesses, and in not excluding Jesse Brown, the deputy sheriff. The record discloses that Jesse Brown conducted the sale in question and participated in the roundup of the horses and that defendant had nothing to do with the roundup or sale of the horses personally. The matter of excluding witnesses under section 10660, Revised Codes of Montana 1935, rests in the discretion of the trial court and this court will not disturb the action of the trial court in the absence of a showing of prejudice. Finlen v. Heinze, 32 Mont. 354, 80 Pac. 918; State v. Walsh, 72 Mont. 110, 232 Pac. 194. This, as above pointed out, was the second trial of the case and we cannot say that plaintiff was prejudiced by having J. J. Galbreath excluded or by the refusal to exclude Jesse Brown.

Plaintiff assigns error in permitting the witnesses W. J. Smith and Royal House to testify over his objection relative to the value of horses of the type in question. The court did not err in allowing this evidence. Smith had 20 or 25 years of experience in buying, selling and trading horses and had some experience in dealing in remount horses and Mr. House had bought and sold horses and in fact bought one at the sale in question. He was familiar with remount horses. The witnesses were qualified to give their opinion of the value of the horses in question. The fact that Mr. House had not bought or sold re-

mount horses would affect the weight but not the admissibility of his opinion.

Error is assigned in not permitting the witness Reagan to testify in rebuttal what remount horses sold 'for at sales conducted in 1940 and 1941. This was not proper rebuttal evidence but part of plaintiff's case in chief and it was not error to exclude the evidence.

Error is assigned in not sustaining plaintiff's motion to strike the first affirmative defense from the answer. This was not error. The first affirmative defense was to the effect that the Galbreaths were the owners of the horses in question and not the plaintiff. Without this special plea, evidence of the facts alleged would have been admissible under the general denial and plaintiff was in no way prejudiced by the ruling of the court in permitting the defense to be pleaded specifically.

In effect the decision on the first appeal held against plaintiff on this issue which was assigned as error on that appeal.

Error is assigned in submitting to the jury the special verdict. This was not error. The court is to be commended for its action in submitting the special verdict where as here the evidence warranted a directed verdict in favor of plaintiff for the one horse in question.

Plaintiff contends that error was committed in permitting the introduction in evidence of the reports made by Mr. Ryan, the livestock inspector. The reports were made pursuant to section 3324, Revised Codes 1935. They were made in triplicate. A copy of each report was transmitted to the livestock commission under section 3326, the original given to the person desiring to remove the animals from the county and the third was held by the inspector. It was the triplicate copy that was introduced in evidence. Complaint is made that it was inadmissible because not made until the day after the sale. There was no evidence of any change in the horses from the time they were sold until they were inspected and hence we see no merit in this contention. These records were admissible as public records, properly au-

thenticated by the person making them. (Secs. 10570, 10576, and 10585, Rev. Codes 1935.)

Error is assigned on the refusal to give four instructions ▮ offered by plaintiff. We have considered each of the offered instructions separately and find no error in refusing to give them. The one most strongly urged is one relating to exemplary damages. On the former appeal we held that such an offered instruction was properly refused. The evidence was not so different on the second trial as to compel a different conclusion on the issue of exemplary damages.

Plaintiff made a motion for directed verdict as to five horses, ▮ one of which was the gelding branded EL and the others branded with a Bar X on the left jaw. The action of the court in submitting the special verdict as to the gelding branded EL and the action on motion for new trial was tantamount to a directed verdict for that one horse. As to the others, from what we have already said the court properly submitted the issue to the jury and properly denied the motion for directed verdict.

Error is assigned in giving certain instructions to the jury. We have considered these assignments and find no basis for condemning the instructions complained of.

Finding no reversible error in the record the judgment as modified by the order on motion for new trial is affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson and Metcalf concur.

Rehearing denied November 10, 1948.