The State of Montana, Acting By and Through the STATE HIGHWAY COMMISSION of the State of Montana, Plaintiff and Respondent, v. HERMAN OSTWALT et al., Defendants and Appellants.

No. 11554.
Submitted April 18, 1969.
Decided May 12, 1969.
454 P.2d 605.

Erickson & Erickson, Leif Erickson (argued), Leif B. Erickson (argued), Helena, for defendants and appellants.

K. M. Bridenstine, Helena, Robert P. Ryan (argued), Billings, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is a highway condemnation case. The landowner's farm consisted of seventy-two acres with some improvements. The landowner had 68 acres under cultivation. The State took 9.22 acres from the farm in a strip off the south side, and there was no separation of any part of the lands of the owner. The land is irrigated and drains from north to south toward the new highway.

A Commissioner's hearing had been had, an award made, and the State appealed. Trial was had before a jury, and a verdict finding the value of the land taken was $4,861.70 and damages to the remainder at $420. This appeal is from the judgment.

At the trial the landowner offered himself as a valuation witness and also produced an expert appraiser, Henry Hibbard. The landowner testified that the value of the entire farm before the taking was $60,000 with $10,000 of that being improvements, leaving a value of $50,000 for the land. The owner then went on to testify that damage for the taking and damage to the remainder was $35,000 which leaves only a value of $15,000 for the land remaining. With only 9.92 acres of land taken, no improvements interfered with in any way, we need not pause long with such figures. The landowner did not farm the land, but rather leased it or rented it on crop-share.

Mr. Hibbard, the appraiser, based upon the rental use of the land, used a capitalization of income method and found a total value for the lands taken and damage to the remainder to be $9,130. Hibbard testified that the farm, prior to the taking, was too small as an economic unit. He used a 5 percent capitalization figure.

The State used an expert appraiser also. He used a comparable sales method since over 50 percent of the lands in the area had changed hands in very recent times. He also checked

with a capitalization of income method, using 6 percent. His figures were $3,227 for value of land taken and damage to the remainder. The jury's total award was $5,281.70.

The issues presented on this appeal are three in number. The first two are inter-connected. Appellant states them as whether the landowner should have been permitted to offer testimony as to a bona fide offer to purchase the property, and whether the renter should have been allowed to give his opinion of value. We say these issues are interconnected because of the manner in which the problem arose at the trial.

Counsel for the landowner on cross-examination of the State's expert asked:

"Q. Did you ever make any inquiry to determine whether anybody had made him [the landowner] offers substantially in excess of $500.00 an acre? A. I have no knowledge of that, no.

"Q. Did you make any inquiry to determine whether or not he actually had a bona fide offer of $1,000.00 an acre in 1965? A. No, I had no knowledge."

The matter was pursued no further at this point. However, on rebuttal, counsel called the renter, witness Hart. Counsel identified the witness as the lessee and as having knowledge of the neighborhood and knowledge of land values and asked his opiion of the value per aare of the property if sold by a willing seller to a willing buyer in 1965. The full record is as follows:

"Q. Now in your opinion based on your long experience in this neighborhood and your knowledge of land values generally, and your knowledge of the sales referred to yesterday, what in your opinion would be the reasonable amount that you could expect per acre if sold by a willing seller to a willing buyer in 1965, now wait for the answer so Mr. Ryan gets a chance—

"MR. RYAN: To object.

"MR. ERICKSON: Yes.

"MR. RYAN: Well, I am sorry it is necessary but I object to it on the grounds that there is no showing that this man is

qualified to give evidence of land values, that there is no show-
ing in the light of—that he has developed any method for ap-
praisal of this particular property and that he is not qualified
to give an opinion in this area.

"THE COURT: Objection overruled and you may proceed.

"Q. What, in your opinion, in 1965 would this farm land—
now referring to the farm land, what in your opinion would
that have been sold for by Herman Ostwalt without any pres-
sure on you?

"MR. RYAN: Counsel didn't have his question answered
that I objected to, and may it be understood that my objection
goes to these questions.

"THE COURT: You may have a continuing objection.

"Q. What in your opinion would it have sold for in 1965?
A. Well, I overheard Herman—

"Q. Wait a minute. We can't get your offer in, what in
your opinion would it have sold for? A. It did sell for—

"MR. RYAN: Because of the voluntary statement about the
offer, I now move that the, or ask that the objection be sus-
tained and this witness be prohibited from answering.

"THE COURT: I think we better go in and argue in Cham-
bers.

"MR. ERICKSON: I am not sure I want to persist in the
question, but I think if I had an opportunity to discuss it in
Chambers I would be in a little better—

"(Whereupon a short recess was here taken, following the
usual admonition to the jury. Court resumed pursuant to re-
cess, parties the same as before.)

"THE COURT: For purposes of the record, let the record
show that the objection made by the State is sustained. You
may proceed, Counsel.

"MR. ERICKSON: And the objection was sustained, Your
Honor?

"THE COURT: Yes.

"MR. ERICKSON: I have no further questions of Mr. Hart."

Since counsel had clearly identified the testimony of the witness as an offer, to allow on rebuttal such testimony would have been to allow evidence of an offer between the lessee witness and the landowner. Counsel then made an offer of proof which only had reference to a proposed offer of $1,000 per acre. It is clear that in rebuttal the landowner was trying to prove an offer. This is why we previously stated that the two issues actually amount to one.

█ It is clear that the admission of rebuttal evidence is a matter largely in the discretion of the trial court, and only where there has been an abuse of this discretion will the decision be reviewed. (Morrison v. City of Butte, 150 Mont. 106, 431 P.2d 79). See also Smith v. Armstrong, 121 Mont. 377, 198 P.2d 795; Gustafson v. Northern Pac. Ry. Co., 137 Mont 154, 351 P.2d 212.

█ Here, the witness Hart had not been disclosed in interrogatories as a witness on value testimony. Additionally in the light of the testimony of the landowner that he valued his property at $50,000 for 68 acres of cultivated lands, it does not seem reasonable that an offer of $68,000 should have much probative value and would go towards sustaining the trial court's discretion. The witness Hart had been called as a witness in the landowner's case in chief but no attempt was made to have him testify as to value then.

Although briefs and oral argument make much of the question of admissibility of offers relating to property taken, we ground our opinion here on the foregoing. (But see Yellowstone Park R. R. Co. v. Bridger Coal Co., 34 Mont. 545, 87 P. 963; Gallatin Valley Elec. Ry. v. Neible, 57 Mont. 27, 186 P. 689; and 7 A.L.R.2d 781, 785.)

As to issue No. 3, appellant states that the court erred in taking from the jury the question of damages that might result to the land remaining from poor drainage as a result of the construction of an inadequate drain.

Instruction No. 8 reads as follows:

"You are instructed that it is the obligation of the State of Montana to keep under suitable repair all drain structures under its highways including frontage roads and interstate highways. Evidence has been received in this case of an existing problem relating to drain structure adjacent to the Herman Ostwalt property. In the event that the State should fail to live up to its obligation to maintain the structures and to provide drainage then the landowner will have a separate and distinct cause of action against the State of Montana for damages. As I have instructed you, just compensation is to be determined as of the date of taking and for this reason you shall not take into consideration in determining the value of the land taken and the damage to the remainder, if any, the evidence relating to the present condition of the drainage structures."

The landowner, in his brief, attempts to make out a theory of damages for a maintenance problem on a culvert on the ground that it was a foreseeable result of proper construction all done in accordance with the plans of the highway department. The theory at first blush sounds all right, but the record simply does not have such evidence, neither as to the plans, construction, or as to any value of resulting damages if any. To fully answer this contention we would have to resort to a discussion of what was not proven rather than what the testimony reveals. Summons issued on March 17, 1965 but the trial did not occur until March 1968. In the meantime the highway had been constructed. The landowner claimed at trial that a drainage problem had developed by reason of silting in a culvert. Neither the landowner nor any witness testified as to any specific acreage allegedly damaged. A surveyor was called as a witness by the landowner and testified that the drain culvert would work although slowly and would require continual maintenance. No elevations were taken or produced; and, for that matter, no testimony as to where the water, if any, would stand if not drained. No complaint of any kind had been made about lack of maintenance by the highway de-

partment. We could go on discussing what was not proven to no avail. We find no merit to the third issue raised.

In the final analysis the jury award is obviously something of a compromise between the experts' values. The two well prepared and well qualified experts were thoroughly examined on their figures, formulas and methods so that the jury had the benefit of their opinions as to value. Finding no error, we affirm.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, HASWELL and BONNER concur.