EBY, RESPONDENT, *v.* CITY OF LEWISTOWN, APPELLANT.

(No. 3,914.)

(Submitted May 4, 1918.  Decided June 25, 1918.)

[173 Pac. 1163.]

*Cities and Towns—Special Improvements—Eminent Domain—*
*Change of Street Grade—Compensation—Statute—Notice of*
*Damage—Constitution—Evidence—Appeal and Error—Offer*
*of Proof.*

Appeal—Record—Sufficiency.
1. Where the record on appeal contains certified copies of the papers making up the judgment-roll, the fact that it does not contain a copy of such roll made up and certified as such does not demand a dismissal of the appeal.

Cities and Towns—Special Improvements—Statute—Constitution.
2. *Held,* that section 13, Laws of 1913, which casts upon the owner of city or town realty embraced within the limits of a proposed special improvement district the burden of ascertaining the amount of damage likely to ensue to the property by reason of its creation, and making claim for the amount within a specified time or be debarred thereafter from doing so, is violative of section 14, Article III, Constitution, which forbids the taking or injuring of private property for a public use until compensation is *first* made or tendered.

Statutes of Limitation—Nature and Purpose.
3. Statutes of limitation are statutes of repose, their object being to suppress stale and fraudulent claims after the evidence of their payment has been lost, or the facts concerning them have become obscure from lapse of time or the defective memory, or death or removal of witnesses.

[As to the effect of the bar of the statute of limitations, see note in 95 Am. St. Rep. 656.]

Cities and Towns—Changing Street Grade—Measure of Damages—Evidence.
4. Evidence to show the cost of filling plaintiff's lots and raising his buildings to grade, and the market value of the property before and after making the improvement, was competent and material in an action to recover damages occasioned by the change.

Same—Pleading—Evidence—Admissibility.
5. Under allegations of the complaint that plaintiff's property had been permanently injured by change in street grade, rendered inaccessible and undesirable for the purposes for which used, necessitating large expenditures in filling and adjusting the lots to grade, *etc.,* and defendant's denial of any damage whatever, the latter was entitled to introduce evidence tending to show that the prop-

On liability of municipal corporation for injury to abutting property from changing the grade of a street under a constitutional provision against "damaging" private property for public use without compensation, see notes in 36 L. R. A. (n. s.) 1194; L. R. A. 1915A, 382.

erty had not been injured or that the damage was less than claimed by plaintiff.

Appeal and Error—Offer of Proof—When Unnecessary.

6.   The rule requiring an offer of proof by the party who desires to preserve for review a ruling sustaining an objection to a question put to a witness does not apply when the question indicates the evidence sought, or where the effect of the ruling is to exclude all evidence on a given subject under a mistaken notion that it is not within the issues.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by J. M. Eby against the City of Lewistown. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Messrs. I. B. Kirkland* and *Mr. Chas. J. Marshall,* for Appellant, submitted a brief; *Mr. Marshall* and *Mr. Oscar O. Mueller,* of Counsel, argued the the cause orally.

Compensatory damages in a case like this mean the difference in the fair market value of the property before and after the change in grade, unless such difference is more than it would cost to place the property back in the same relative position with respect to the new grade that it occupied with respect to the grade as it existed just prior to the change. No proof of the diminished value of the property was offered by the plaintiff. The evidence offered by the defendant that the property had not been diminished in value by reason of the change of grade and improvement of Janeaux Street, in front of plaintiff's property, was rejected by the court. Under the rulings of the leading courts of the country, in fact every state which this court would feel itself justified in following, the defendant is entitled to have the judgment in this case set aside and a new trial granted to it. The cases are taken from the courts of last resort of states where the constitutional provision regarding the taking of private property for public use, without compensation first being made therefor, is the same or similar to the constitutional provision of the state of Montana on that subject. (See *Enid & A. Ry. Co.* v. *Wiley,* 14 Okl. 310, 78

Pac. 96; *Pedelty* v. *Wisconsin Zinc Co.,* 148 Wis. 245, 134
N. W. 356; *Smith* v. *Kansas City* (Mo.), 30 S. W. 314; *Stroker*
v. *City of St. Joseph,* 117 Mo. App. 350, 93 S. W. 860; *City
of Rawlins* v. *Murphy,* 19 Wyo. 238, 115 Pac. 436; *Somers* v.
*Metropolitan Elevated Ry. Co.* and *Bohm* v. *Metropolitan Ele-
vated Ry. Co.,* 129 N. Y. 576, 14 L. R. A. 344, 29 N. E. 802;
*Blair* v. *City of Charleston,* 43 W. Va. 62, 64 Am. St. Rep.
837, 35 L. R. A. 852, 26 S. E. 341; *Swift & Co.* v. *Newport
News,* 105 Va. 108, 3 L. R. A. (n. s.) 404, 52 S. E. 821.) In
*Springer* v. *City of Chicago,* 135 Ill. 552, 12 L. R. A. 609, 26
N. E. 514, the court says: "If the fair market value of the
property is as much immediately after the improvement as it
was before the improvement was made, no damage has been
sustained, and no recovery can be had." For cases from other
jurisdictions than those quoted and cited from in this brief,
laying down the same rule for measure of damages, see Century
Digest, title "Municipal Corporations," section 395, and cases
cited in notes.

California and Minnesota have constitutional provisions iden-
tical with our own. Furthermore, section 6068 of the Civil
Code of Montana was taken, *verbatim,* from section 3333 of the
Civil Code of California. Therefore, a determination of the
highest court of the latter state upon this question should be
conclusive. (See *Eachus* v. *Los Angeles Consolidated E. Ry.
Co.,* 103 Cal. 614, 42 Am. St. Rep. 149, 37 Pac. 750; *Nelson*
v. *Village of West Duluth,* 55 Minn. 497, 57 N. W. 149; *Sall-
den* v. *City of Little Falls,* 102 Minn. 358, 120 Am. St. Rep.
635, 13 L. R. A. (n. s.) 790, 113 N. W. 884.)

*Messrs. Belden & De Kalb,* for Respondent, submitted a
brief; *Mr. O. W. Belden* argued the cause orally.

The measure of damages adopted in this case has been held
proper in a number of cases. (*City of Seattle* v. *Methodist
Protestant Church,* 138 Fed. 307, 70 C. C. A. 597; *City of
Chicago* v. *Jackson,* 196 Ill. 496, 63 N. E. 1013–1135; *Stroker* v.
*St. Joseph,* 117 Mo. App. 350, 93 S. W. 860; *Graessle* v. *Car-*

*penter,* 70 Iowa, 166, 30 N. W. 392; *Lentz* v. *Carnegie,* 145 Pa. 612, 27 Am. St. Rep. 717, 23 Atl. 219; 2 Abbott on Municipal Corporations, p. 1936, sec. 814.) For a full and complete analysis of the rights and remedies of an injured party in cases of this kind where compensation was not first made, we refer the court to the case of *Blackwell, E. & S. W. Ry. Co.* v. *Bebout,* 19 Okl. 63, 14 Ann. Cas. 1145, 91 Pac. 877, and the note on the subject appended to the last citation. We contend that a recognition of the rule claimed by appellant to govern in cases of this kind needs very careful revision at the hands of the courts. It is unscientific in the extreme. It has been quite universally held in other classes of cases that a wrongdoer shall not be permitted to profit by the wrong done. Theoretically, because the grading of a street results in the saving to the property owner whose property abuts thereon of the cost of digging a basement does not, we contend, entitle the wrongdoer to offset that saving. That would be thrusting upon him a benefit which, perhaps, he did not desire. This alleged right has been denied in the following cases, and we think clearly on principle: *Pinney* v. *Winsted,* 83 Conn. 411, 76 Atl. 994 (in which it was said: "He cannot thrust benefits upon the land owner and then set up the benefits in reduction of the damage caused by these acts"); *Turner* v. *Rising Sun etc. Turnpike Co.,* 71 Ind. 547; *Baillio* v. *Burney,* 3 Rob. (La.) 317 (clearing of land); *Loomis* v. *Green,* 7 Me. 386 (improvement of an estate from the cutting of trees); *Leigh* v. *Garysburg Mfg. Co.,* 132 N. C. 167, 43 S. E. 632 (benefit to plaintiff's tenants not admissible in mitigation of an injury to his freehold); *Hurley* v. *Jones,* 165 Pa. St. 34, 30 Atl. 499 (improvement of a lot from filling it in).

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On May 11, 1914, the council of the city of Lewistown, Fergus county, under the provisions of the Act of the legislature entitled "An Act relating to special improvement districts in

cities and towns," *etc.,* approved March 14, 1913 (Laws 1913, Chap. 89), passed a resolution of intention to create a special improvement district for the purpose of excavating, filling and grading Janeaux Street, one of the principal streets of the city, and the intersections thereof (excluding the intersection of First Avenue and Janeaux Street), between the southwesterly boundary line of Sixth Avenue and the northeasterly boundary line of Dawes Street. After notice had been given as required by the Act, such proceedings were had that the district was created by resolution passed on June 8; it being designated as special improvement paving district No. 17. On July 1 a contract was let by the mayor and the city clerk, under the direction of the city council, to J. C. Maguire for the doing of the work in accordance with plans and specifications which had been prepared by the council, to conform to the grade as established by ordinance designated as Ordinance No. 293, enacted on June 14. The work was at once begun, and continued to completion on September 15. The plaintiff is the owner of lots 4, 5 and 6, and fractional lot 7, in block N–16, of the original town site of Lewistown, and fractional lot 3 of the Morase Addition thereto. Fractional lots 7 and 3 together constitute a lot of the same area as the other three. For present purposes, the three lots and the two fractional lots may be considered as four lots. They are each 50 feet in width by 90 feet in depth, and constitute a quadrangular area with a frontage on Janeaux Street of 200 feet, extending back to an alley running parallel with it through the block. The quadrangle is bounded on the northeasterly side by Fifth Avenue. Plaintiff's lots therefore lie between Fifth and Sixth Avenues. On the front of lot 4, facing Janeaux Street, is a brick building used as a plumber's shop. This extends several feet over on lot 5. On the rear of lot 4 there is a small residence which fronts on Fifth Avenue. On lot 6 there is also a small residence. There are no improvements on lot 7. Prior to the passage of the ordinance establishing the grade, Janeaux Street had followed the contour of the natural surface, except that in front of lot 7, and lots be-

tween it and Sixth Avenue, a narrow fill had been made by dumping waste material therein, in order to render more convenient the approach to Sixth Avenue to the southwest, the general level of which was about ten feet above that of all the plaintiff's lots. The change of grade effected by the ordinance, except as noted, was from the natural contour to a uniform grade from the intersection of Janeaux Street and Fifth Avenue, along the front of the entire block, to the intersection of the former with Sixth Avenue.

This action was brought to recover damages for injury claimed to have been caused to plaintiff's lots by the change of grade. It is alleged in the complaint:

"V. That between the eleventh day of May, A. D. 1914, and the fifth day of October, A. D. 1914, the defendant wrongfully and unlawfully, and without plaintiff's consent, and against his will, and without taking any steps whatsoever to have appraised, or to pay, the damages done to plaintiff's said property and accruing to plaintiff, and without any offer to pay plaintiff therefor, defendant caused the grade of Janeaux Street, upon which said lots fronted as aforesaid, to be greatly raised, changed, and altered, thereby placing the said property and the said buildings and permanent structures thereon far below the surface grade of said Janeaux Street, whereby plaintiff's property and said buildings and structures were and are permanently injured, damaged, rendered inaccessible, inconvenient, and undesirable for the purposes for which they were and are designed, and necessitating upon the part of the plaintiff a large expenditure of money and loss of time in placing the said buildings on the grade of said street and filling and adjusting the said lots to such grade, to plaintiff's damage in the sum of $5,000."

In its answer the defendant admits that it caused the grade of Janeaux Street to be raised, changed and altered as alleged, but denies that plaintiff's property was thereby damaged in any amount whatever. As a special defense in bar of the action, the answer then sets forth all the proceedings resulting

in the creation of special improvement paving district No. 17. It then alleges, in substance, that the work was done under a contract let by the city to Maguire; that it was done strictly in accordance with the contract, to conform to the grade established by the ordinance; that the plaintiff wholly failed and neglected, during sixty days after the contract was let, to file a written claim for damages which would be caused to his said lots, as provided by section 13 of Chapter 89 of the Act referred to above; that by failure to file his claim within the time limited by the Act for that purpose he waived his right to claim damages; and that therefore his right to maintain the action is barred by the provisions of said section. On motion of plaintiff the court struck out all that portion of the special defense alleging waiver, leaving to be tried only the issues as to the fact of injury and the amount of damages to which plaintiff might be entitled. The plaintiff had verdict and judgment for $2,500. The defendant has appealed from the judgment.

In their brief, counsel for plaintiff object to the consideration [1] of the appeal on the merits, and move for a dismissal of it on the ground that the record does not contain a copy of the judgment-roll, made up and certified as such. The record is substantially in the same form as was that before us in *Stokes* v. *Long*, 52 Mont. 470, 159 Pac. 28. In disposing of the second ground of the motion to dismiss the appeal in that case, we held that the record was sufficient to meet all the requirements of section 6799 of the Revised Codes. The motion is therefore denied.

The contention is made that the court erred in striking out [2] the latter portion of defendant's special defense. Section 13 of the Act is as follows: "At any time within sixty days from the date of the award of contract any owner or other person, having any interest in any lot or land liable to assessment, who claims that any of the previous acts or proceedings, relating to said improvements, are irregular, defective, erroneous, or faulty, or that his property will be damaged by the making of any of the improvements in the manner contemplated, may

file with the city clerk a written notice, specifying in what respect said acts or proceedings are irregular, defective, erroneous, or faulty, or in what manner and to what extent his property will be damaged by the making of said improvements. Said notice shall state that it is made in pursuance of this section. All objections to any act or proceeding or in relation to the making of said improvements, not made in writing, and in the manner and at the time aforesaid, and all claims for damages therefor, shall be waived by such property owner: Provided, the notice of the passage of the resolution of intention has been actually published and the notices of improvements posted, as provided in this Act."

By a reading of this Act, giving special attention to section 19, it becomes apparent that, so far as it relates to damages claimed by a property owner in an improvement district for injury to his property by a change of grade, the legislature had in view two purposes: (1) To debar such owner from any claim for compensation for damage to his property which he anticipates will be wrought by a proposed improvement, if he fails to ascertain the amount and extent of it, and to give notice in writing thereof to the council within the specified time; and (2) if notice is given, and he is awarded damages, to enable the council to add the amount of them to the cost of making the improvement when it comes to spread the assessment upon the property included in the district. It is not disclosed by anything in the record upon what theory the trial court struck out the portion of the special defense. Counsel for the plaintiff insist that its action can be upheld, either on the ground that section 13 is void as being repugnant to section 14 of Article III of the state Constitution, or that it is void, because violative of section 29 of the same Article of that instrument. The first of these provisions is: "Private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner." To uphold the court's action on this ground, counsel argue that this provision of the Constitution imposes

upon the agency of the state, which may be clothed with authority to take or damage private property for public use, the duty (a) to ascertain upon its own initiative what will be just compensation for the property to be taken or damaged in order that a particular public purpose may be served, and (b) to pay such compensation to the owner or tender it to him, before the taking or damaging occurs, and that section 13, *supra,* is clearly repugnant to it in imposing upon the owner who anticipates that his property will be damaged, the obligation to ascertain the amount of damages he will suffer and to make claim for it within the specified time at the peril of being altogether debarred from thereafter making any claim. Counsel for defendant contend that section 13 is merely a statute of limitations, and that, since it is within the power of the legislature to fix a limit within which an action may be brought upon any kind of claim, the section is not obnoxious to the objection made to it.

It must be conceded that the legislature is free to enact statutes of limitations because the Constitution does not deny it the power to do so. Such enactments may even be made to apply to causes of action already existing, provided only a reasonable time is fixed by the legislature in which parties may commence actions upon them before the statutory bar may be pleaded. (*Guiterman* v. *Wishon,* 21 Mont. 458, 54 Pac. 566.) If, however, we keep in mind the nature and object of statutes of limitation, it is apparent that the provision in question can [3] not be classed as such. The principle upon which statutes of limitation are based is that they are statutes of repose; their object being to suppress stale and fraudulent claims after the evidence of their payment has been lost, or the facts concerning them have become obscure from lapse of time or the defective memory, or death, or removal of witnesses. (25 Cyc. 983; *Anaconda Min. Co.* v. *Saile,* 16 Mont. 8, 50 Am. St. Rep. 472, 39 Pac. 909.) Section 13, *supra,* does not fix a limit within which the property owner may bring his action, but merely raises a conclusive presumption that he has elected to waive any

damage he will suffer by the change of grade, if he fails to ascertain and notify the city authorities of the manner and extent of it. In this it is distinguishable from a statute of limitations, application of which depends upon whether the time within which a particular claim may be enforced by action has expired. It falls rather within the class of provisions similar to section 3289 of the Revised Codes. The purpose of this provision is to enable the city to examine the place where an injury occurs "by reason of any defect in any bridge, street, road," *etc.*, to consult those who may be witnesses, and to have the opportunity to adjust and settle the claim and avoid litigation, if investigation discloses liability to make compensation. (*Tonn* v. *City of Helena*, 42 Mont. 127, 36 L. R. A. (n. s.) 1136, 111 Pac. 715.)

By many of the courts these provisions are classed as special statutes of limitation, in that the giving of the required notice is a preliminary step necessary to be taken to enforce the claim. (*Schmidt* v. *Fremont*, 76 Neb. 577, 97 N. W. 830; *Belkin* v. *Iowa Falls*, 122 Iowa, 430, 98 N. W. 296; *Van Auken* v. *City of Adrian*, 135 Mich. 534, 98 N. W. 15.) In our opinion, the better view is that the giving of the notice is of the essence of the right of action itself, without allegation and proof of which no recovery can be had. (*Dolenty* v. *Broadwater County*, 45 Mont. 261, 122 Pac. 919.) These remarks, however, are a digression remotely germane, if germane at all, to the real question at issue. The rule of construction applicable to the provision of the Constitution invoked is declared by the instrument itself. (Sec. 27, Art. III.) Expressed in terms clearly prohibitory, without words in itself or elsewhere in the Constitution expressly declaring it to be otherwise, it is a limitation denying to the legislature the power to authorize the taking or damaging of the property of the citizen without a fulfillment of the condition expressly imposed by it, *viz.:* "Without just compensation having been first made to or paid into court for the owner." (Art. III, sec. 14.) By adopting it the convention modified the rule of the common law, which

denied to the owner compensation for infringements upon his right of free access to his property by changes in the grade of the street upon which it abuts (*Less* v. *City of Butte,* 28 Mont. 27, 98 Am. St. Rep. 545, 61 L. R. A. 601, 72 Pac. 140), and secured to him the possession and enjoyment of it free from interference with it by any means for any public purpose, until just compensation has been ascertained and made or tendered to him. The making or tendering of compensation is thus made a condition precedent. On this subject this court said in *Flynn* v. *Beaverhead County,* 49 Mont. 347, 141 Pac. 673: "By force of this provision private property cannot be taken for a public use *in invitum,* except upon compensation first being made to the owner. In other words, the payment or tender of compensation, the amount of which has been ascertained in the manner provided by law, is made a condition precedent to the acquisition of any right by the public. * * * Possession taken from the owner without compliance with this condition is wrongful, and ejectment will lie in favor of the owner to recover it. The fact that the wrongdoer is a municipal corporation does not affect the right to maintain the action." If the making of just compensation is a condition precedent, then it is beyond the power of the legislature to require the owner to do any act in order to secure what is guaranteed to him by the fundamental law.

When we come to examine the decisions of the courts of those states whose Constitutions contain provisions couched in the same or substantially the same terms as our own, we find them in hopeless conflict. For illustration: The courts of Ohio, Missouri and California uphold provisions of statute or city charters having the same purpose and effect as section 13, *supra.* (*Wabash R. R. Co.* v. *City of Defiance,* 52 Ohio St. 262, 40 N. E. 89; *Kansas City* v. *Duncan,* 135 Mo. 571, 37 S. W. 513; *Potter* v. *Ames,* 43 Cal. 75; *Sala* v. *Pasadena,* 162 Cal. 714, 124 Pac. 539.) The courts of other states interpreting the Constitution as imposing upon the agency of the state the obligation to first make compensation to the private owner, with much

more reason declare that the owner cannot be compensated by an opportunity afforded him to litigate for it, however long the time allowed him for that purpose. (*Levee Commrs.* v. *Dancy,* 65 Miss. 335, 3 South. 568; *Kincaid* v. *City of Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820; *Kime* v. *Cass County,* 71 Neb. 677, 8 Ann. Cas. 853, 99 N. W. 546, 101 N. W. 2.)

In *Levee Commrs.* v. *Dancy, supra,* the court said: "Obtaining by grant from the owner, or by adverse possession, long enough to bar his claim to the property, or condemning and paying for it, are the only modes of obtaining private property for public use in this state; and no Act which devolves on the owner the duty of initiating proceedings for compensation for his property, as the condition of his obtaining it, is allowable. He cannot be required to become an actor under the penalty of losing his property and 'due compensation' for it, if he shall not. He may enjoy his own, secure under constitutional guaranty, until an inquest by public authority determines that it is required for public use, and fixes the price to be paid him for the sale of it, and this price must be paid or tendered before his right can be divested, and a right to ask for compensation in three months or three years is not a valid substitute for the constitutional right to 'due compensation first being made.' The objection that the claim for compensation was not made in time is therefore not maintainable."

In *Kime* v. *Cass County, supra,* the court on this subject made use of the following very terse language: "If the legislature could rightly require of the land owner one affirmative and initiatory act as a condition precedent to obtaining damages, they might require of him any other, or a series of acts which might be difficult or onerous, or in some circumstances impossible of performance, and so the constitutional guaranty might thus be seriously impaired, or wholly frittered away. We are of opinion that the spirit, if not the letter, of the Constitution, requires that the public, seeking to appropriate private property to its use, should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own

motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless continued for the statutory period of limitations, be regarded as a waiver of his rights.''

Mr. Lewis, in his work on Eminent Domain (third edition, section 676), states his views thus: ''These [constitutional] provisions are imperative, and any law which violates them is incapable of enforcement. * * * The same rule applies to a taking by municipal corporations as to others.''

The foregoing cases, except *Kincaid* v. *City of Seattle,* had under consideration the taking of property for public use, and not consequential injury caused by the change of grade in a street by order of the municipality. Yet, as pointed out in that case, they logically hold that a statute which requires the owner, whether his property is about to be taken or damaged, to initiate his right to compensation by affirmative act, is violative of the guaranty declared by the section of the Constitution, *supra.* We agree with this view, and therefore hold that the court properly struck out the part of the pleading setting up the bar of the statute.

Since this conclusion disposes of this branch of the case, we shall not examine the question whether the section of the statute in question is also violative of the other provision of the Constitution which guarantees due process of law.

At the trial plaintiff introduced evidence to show what it [4] would cost to fill the lots and raise the buildings to the grade of Janeaux Street as established by the ordinance, including the construction of retaining walls along the alley in the rear and along the boundary line between lot 7 and the one adjoining it toward Sixth Avenue, and then rested. Counsel for defendant interposed an objection that it was incompetent and immaterial, because it did not tend to establish the correct measure of damages, because it did not tend to show that the market value of the property was diminished by the change

of grade, and because it was not accompanied by other evidence tending to show that the filling of the lots and raising of the buildings would restore them to the same relative position with respect to the present grade of Janeaux Street as they occupied with respect to the grade of that street before the change was made. The court overruled the objection. Counsel for defendant entertained the view that the correct standard of damages is the difference between the fair market value of the property before and after the change in the grade had been effected, less the amount of benefits accruing to it by reason of the improvements. They called witnesses and offered to show by them that according to this standard of measurement plaintiff's property had not been damaged to any extent. The court held that the evidence sought was incompetent and immaterial, and refused to permit counsel to examine the witnesses. The real inquiry presented by the contentions of counsel, therefore, is whether the court heard and submitted the case to the jury upon the correct theory of damages.

The general rule by which damages to real estate are to be measured is stated by Mr. Sedgwick as follows: "The general principle upon which compensation for injuries to real property is given is that the plaintiff should be reimbursed to the extent of the injury to the property. The injury caused by the defendant may be of a permanent nature; in such a case the measure of damages is the diminution in the market value of the property. * * * If the injury is easily reparable, the cost of repairing may be recovered. But it must be shown that the repairs were reasonable; and if the cost of repairing the injury is greater than the diminution in market value of the land, the latter is always the true measure of damages. Strictly speaking, therefore, the cost of repairs is not the measure of damages, but only evidence of the amount of damages." (3 Sedgwick on Damages, sec. 932.)

In 38 Cyc., at pages 1126 and 1127, the rule is stated thus: "The difference in the value of land before and after the trespass is the general rule as to the measure of damages for an

injury to the land itself, and this means the difference in value
of the entire tract, not merely the ground at the exact place of
injury.    But where the land can be restored to its former con-
dition at a cost less than the diminution in value, if it is not
restored, the cost of restoration, plus compensation for loss of
time, is frequently laid down as the measure of damages.
However, the application of this principle is confined to cases
where the cost of restoration is less than the difference in the
value of the land before and after the trespass, and, of course,
it is limited to cases where cost of restoring the specific land
is less than the value of the land.    Evidence of cost of restora-
tion is admissible only to reduce, not to increase, the damages
above the diminution in value of the land resulting from the
trespass.''

In Volume 28 of the same work, at pages 1074–1076, we find
this statement of the measure of damages for changes of grade
and the like: ''The general rule as to the measure of damage,
whether for a change of grade, street opening, or other im-
provement, is that it consists of the difference in the value of
the property affected immediately before and immediately after
the making of the improvement, allowance being made for the
particular use to which the property is adapted, and for direct
benefit it has received by reason of the improvement.   *   *   *
Where the rule is adopted that the measure of damages is the
change in market value, specific items of injury can be con-
sidered only in determining the difference in market value, not
as the basis of specific awards of damages.    An abutting owner
has no right to damages for a change of grade, where the prop-
erty is left as convenient of access as before and there is no
depreciation in its market value, or in case the market value
of the property, including the use to which it may be devoted,
will be enhanced.''    Again, on pages 1079 and 1080: ''If the
particular property is benefited as much as damaged, there can
be no recovery, and benefits accruing to property by reason of
the improvement may be set off against damages, if such benefits
are special, and not in common with those resulting to property

in general; but, where an abutting owner is assessed for the cost of the improvement, the only benefit that can be set off is that which is in excess of the assessment levied against him.''

In their work on Taxation and Assessment (Volume 2, section 661), Page & Jones state the rule in this language: ''If, by reason of a public improvement, injury is caused to private property for which the public corporation constructing the improvement is liable in damages, the measure of damages is the difference between the market value of the property as it was before the alteration and as it was immediately afterwards, subject to deduction for special benefits caused by such improvements.''

In McQuillin on Municipal Corporations, Volume 4, section 1991, the author says: ''The measure of damages resulting to property from the change of grade of a street, or other public improvement, is the difference between the fair market value of the property just before the work was done and such value thereafter, less any special benefit and advantage thereto resulting from the improvement.''

The rule thus stated in varying terms is recognized by the courts generally. (*Sweeney* v. *Montana C. Ry. Co.*, 25 Mont. 543, 65 Pac. 912; *Enid & A. Ry. Co.* v. *Wiley*, 14 Okl. 310, 78 Pac. 96; *Hartshorn* v. *Chaddock*, 135 N. Y. 117, 17 L. R. A. 426, 31 N. E. 997; *Pedelty* v. *Wisconsin Zinc Co.*, 148 Wis. 245, 134 N. W. 356; *Smith* v. *City of Kansas City*, 128 Mo. 23, 30 S. W. 314; *Stroker* v. *City of St. Joseph*, 117 Mo. App. 350, 93 S. W. 860.) Tested by the rule laid down in these authorities, the evidence showing the cost of restoration was competent and material. In *Hartshorn* v. *Chaddock, supra,* the New York court held that, in the absence of evidence introduced by either party showing the effect of the injury upon the market value, evidence showing the cost of restoration was sufficient to sustain an award of damages. The evidence offered by the defendant, tending to show the market value before and after the installment of the improvement, was also competent, and in excluding it the court was in error. Defendant was clearly entitled to

show if it could, that the value of plaintiff's property was actually enhanced by the improvement, and that he was not entitled to recover anything. In case it could not show this, it was nevertheless entitled to show by the evidence, so far as it had value for that purpose, that the diminution in value was less than the cost of restoration. The court would not otherwise be in a position to submit the case to the jury in such a way as to enable them to ascertain and declare what compensation, if any, the plaintiff was entitled to. For this error the defendant is entitled to a new trial.

Throughout the trial counsel for the plaintiff assumed the **[5]** position that the complaint was so formulated as to tender issue solely upon the cost of restoration of the property, and hence that the evidence of the market value of the property offered by defendant was incompetent, because it was without this issue. There is no merit in this contention. The allegations of the paragraph quoted *supra* may be criticised on the ground of indefiniteness, but they are broad enough to permit the introduction of evidence on any theory of the measure of damages. Hence defendant, under the denials of its answer, was entitled to introduce any evidence that would tend to show that plaintiff's property had not been injured or that the damage was less than claimed by him.

Counsel for plaintiff insist that, since no formal offer of proof **[6]** was made by defendant disclosing what the witnesses would have testified respecting the difference in the market value of the property before and after the change in the grade was made, this court cannot determine whether the trial court erred in refusing to allow counsel for defendant to question them. It is the general rule that when counsel desires to preserve for review a ruling which sustains an objection to a question put to a witness, he must show by an offer of proof what the answer to the question would have been. (*Zvanovich* v. *Gagnon Co.,* 45 Mont. 180, 122 Pac. 272.) This rule does not apply, however, when the question itself indicates what evidence was sought to be brought out by it; nor does it apply

to a ruling the effect of which is to exclude all evidence on a given subject, on the mistaken notion that it is not within the issues made by the pleadings. Under such circumstances, an offer of proof is not necessary.

Contention is made that the court erred in refusing to submit certain instructions requested by the defendant. What has already been said disposes of the contentions made in this behalf, and will be sufficient to guide the court on another trial.

The judgment is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.