GALLATIN VALLEY ELECTRIC RY., APPELLANT, *v.* NEIBLE ET AL., RESPONDENTS.

(No. 4,056.)

(Submitted November 11, 1919. Decided December 29, 1919.)

[186 Pac. 689.]

*Railroads — Eminent Domain — Damages — General Neighborhood Benefits—Evidence—Offers Made to Owner—Inadmissibility—Judgment—Compound Interest—Harmless Error.*

Eminent Domain—Railroad Right of way—General Neighborhood Benefits—Evidence—Inadmissibility.
   1. Where land is taken by a railroad company for right of way purposes, general neighborhood benefits resulting to the owner in common with others from the construction of the road, the building of a depot, elevator, *etc.*, but not peculiar or special to himself, may not be set off against the damages resulting to him from the taking of the land; hence evidence of such general benefits was properly excluded.

   [As to the deduction of benefits in assessing damages in eminent domain proceedings, see notes in 13 Ann. Cas. 603; 19 Ann. Cas. 859; Ann. Cas. 1914B, 478.]

Same—Damages—Computation.
   2. Under section 7342, Revised Codes, damages suffered by the owner of land taken by condemnation proceedings for a railroad right of way must be computed as of the day of the summons.

Same—Judgment—Compound Interest.
   3. A judgment in condemnation proceedings arrived at by deducting from the amount awarded to the owner of the land taken the sum paid into court at the time the plaintiff railroad company was let into possession, computing interest upon the balance so ascertained from that date to the date of entry of judgment and adding it to such balance, the sum total to bear interest at eight per cent per annum until paid, was not objectionable as allowing compound interest.

Same—Offers Made to Owner—Evidence—Harmless Error.
   4. Error in permitting the husband of defendant in condemnation proceedings to testify that an offer of $125 per acre of the land in

question had been made, *held* to have been rendered harmless by an instruction to the jury not to consider any evidence of offers made and refused at any time.

*Appeal from District Court of Gallatin County; Ben B. Law, Judge.*

PROCEEDINGS in eminent domain by the Gallatin Valley Electric Railway, a corporation, against Matthias Neible and Susan B. Clark. From the judgment in favor of defendants and an order denying plaintiff a new trial, plaintiff appeals. Order affirmed, and judgment directed to be modified, and as modified, to stand affirmed.

*Mr. Walter S. Hartman,* for Appellant, submitted a brief, and argued the cause orally.

From the authorities below cited, we affirm the doctrine that. when the land owner has been paid the full value of the land actually taken for railroad purposes, the road has been constructed, and the market value of his property remaining has been enhanced by the improvement, the rule that provides that property shall not be taken for public use without compensation first being paid has been fully satisfied; that it is to be presumed that the improvement when constructed will continue to be operated as constructed and not dismantled and abandoned; that the property is benefited if it is enhanced in value by the construction, maintenance and operation of the improvement, whether such enhancement be by reason of special facilities afforded the land owner for transportation purposes or by reason of an increase in value to the lands, common to other lands in the immediate vicinity, and that the mere fact that other lands are likewise increased in value does not prevent the consideration of the enhancement in value of the lands in question. (See 10 R. C. L., sec. 140; 15 Cyc. 767, 768; *Moran v. Ross,* 79 Cal. 549, 21 Pac. 958; *California Pac. R. Co. v. Armstrong,* 46 Cal. 85; *Beveridge v. Lewis,* 137 Cal. 619, 92 Am. St. Rep. 188, 59 L. R. A. 581, 67 Pac. 1040, 70 Pac. 1083; *Fifer v. Ritter,* 159 Ind. 8, 64 N. E. 463; *Lewis v. City of*

*Seattle,* 5 Wash. 741, 32 Pac. 794; *Hilbourne* v. *Suffolk County,* 120 Mass. 393, 21 Am. Rep. 522; *Sutro* v. *Manhattan Ry. Co.,* 137 N. Y. 592, 33 N. E. 334; *Abney* v. *Texarkana S. & N. Ry. Co.,* 105 La. 446, 29 South. 890; *Baltimore & N. Y. R. Co.* v. *Bouvier,* 70 N. J. Eq. 158, 62 Atl. 868; *Brand* v. *Union Elevated Ry. Co.,* 258 Ill. 133, Ann. Cas. 1914B, 473, L. R. A. 1918A, 878, 101 N. E. 247; *Chicago, S. F. & C. Ry. Co.* v. *McGrew,* 104 Mo. 282, 15 S. W. 931; *Nelson* v. *Atlanta,* 138 Ga. 252, 75 S. E. 245; *Western Newspaper Union* v. *Des Moines,* 157 Iowa, 685, 140 N. W. 367; *Custer Township* v. *Dawson,* 178 Mich. 367, 144 N. W. 862; *Little Tarkio Drainage District* v. *Richardson,* 237 Mo. 49, 139 S. W. 576; *New York etc. Ry. Co.* v. *Siebrecht,* 73 Misc. Rep. 219, 130 N. Y. Supp. 1005; *Brainerd* v. *State,* 74 Misc. Rep. 100, 131 N. Y. Supp. 221; *Bramlett* v. *City Council of Greenville,* 88 S. C. 110, 70 S. E. 450; *Bailey* v. *Clinton,* 88 S. C. 118, 70 S. E. 446.)

*Mr. George Y. Patten,* for Respondent, submitted a brief and argued the cause orally.

It is universally held that only benefits which are peculiar to the land in controversy, and not such as are general to lands in the neighborhood, are to be allowed as offsets against the damages caused by the severance. This rule, moreover, is not necessarily affected by the other rule, announced by some of the courts, that special benefits which are allowable do not cease to be such because they also accrue to other lands not damaged by the railroad. This latter rule, however, must be taken in a very restricted sense, if it can be justified as a correct statement of a principle at all, and can only be applied in exceptional cases, because it manifestly impinges upon the other rule just stated, which marks the fundamental distinction between benefits which are chargeable, and those which are not. Neither of these rules, however, determines, but both merely evolve, the question here as to what are the "benefits" which are special and allowable as offsets, as distinguished from those benefits which are general and are not to be allowed.

Cases containing interesting discussions of the subject of the general rule which has just been stated, that benefits must be special and peculiar to the land as distinguished from those which are general in character, are: *Guyandott Valley Ry. Co. v. Buskirk,* 57 W. Va. 417, 110 Am. St. Rep. 785, 50 S. E. 521; *Heninger* v. *Peery,* 102 Va. 896, 47 S. E. 1013; *Southern Illinois & M. Bridge Co.* v. *Stone,* 194 Mo. 175, 92 S. W. 475; *Lambeth* v. *Southern Power Co.,* 152 N. C. 371, 67 S. E. 921; *Whitman* v. *Boston & M. R. R.,* 89 Mass. (7 Allen) 313; *Cross* v. *Plymouth County,* 125 Mass. 557; *French* v. *Lowell,* 117 Mass. 363.

It is well established that the construction of depots or stations, or similar conveniences, within the vicinity, is not a special benefit which can properly be allowed. (*Washburn* v. *Milwaukee etc. R. Co.,* 59 Wis. 364, 18 N. W. 328, 333; *Pochila* v. *Calvert etc. Ry. Co.,* 31 Tex. Civ. App. 398, 72 S. W. 255; *Kirby* v. *Panhandle & G. Ry. Co.,* 39 Tex. Civ. App. 252, 88 S. W. 281; *International & G. N. R. Co.* v. *Bell,* 62 Tex. Civ. 117, 130 S. W. 634; *Sloan* v. *New York El. R. Co.,* 63 Hun, 300, 17 N. Y. Supp. 769; *Illinois, I. & M. R. Co.* v. *Borms,* 219 Ill. 179, 76 N. E. 149; *Roberts* v. *Board of Brown County Commrs.,* 21 Kan. 247; *Hempstead* v. *Salt Lake City,* 32 Utah, 261, 90 Pac. 397; *Little Rock & Ft. S. Ry. Co.* v. *Allister,* 68 Ark. 600, 60 S. W. 953; *Sullivan* v. *North Hudson County R. R. Co.,* 51 N. J. L. 518, 18 Atl. 689; *Pichon* v. *Martin,* 35 Ind. App. 167, 73 N. E. 1009; *Lake Roland El. Ry. Co.* v. *Frick,* 86 Md. 259, 37 Atl. 650.) No deduction is to be allowed for benefits arising from the construction and operation of the railroad. (*Union Traction Co.* v. *Pfeil,* 39 Ind. App. 51, 78 N. E. 1052.)

The general enhancement in the value of lands adjoining and in the vicinity of the railroad, due to the building of the railroad, is not a proper element of benefit to be allowed, many of the courts remarking that the owner, and not the railroad company, is entitled to this increase. (*Mahaffey* v. *Beech Creek R. R.,* 163 Pa. St. 158, 29 Atl. 881; *Shimer* v. *Easton Ry. Co.,* 205 Pa. 648, 55 Atl. 769; *Eastern Texas R. Co.* v. *Eddings,* 30

Tex. Civ. App. 170, 70 S. W. 98; *St. Louis, M. & S. E. R. Co.* v. *Continental Brick Co.,* 198 Mo. 698, 96 S. W. 1011; *Williamson* v. *Read,* 106 Va. 453, 56 S. E. 174; *Crystal City & U. R. Co.* v. *Boothe* (Tex. Civ. App.), 126 S. W. 700; *Routh* v. *Texas Traction Co.* (Tex. Civ. App.), 148 S. W. 1152; *Buckhannon & N. R. Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423, 83 S. E. 1031; *Pittsburgh B. & B. R. Co.* v. *McCloskey,* 110 Pa. St. 436, 1 Atl. 555; *Mississippi Ry. Co.* v. *McDonald,* 59 Tenn. (12 Heisk.) 54.)

MR. JUSTICE HURLY delivered the opinion of the court.

This is an action by appellant to condemn a right of way for a railroad through the lands of respondents. On May 25, 1910, commissioners were appointed, who filed their report on June 7 of that year, assessing damages in favor of respondents. On June 11, 1910, the appellant gave bond to the respondents for the construction of farm crossings, fences, *etc.,* and on said date paid into court $1,265 for the benefit of respondent Clark, and likewise paid for the benefit of respondent Neible, $1,027.25, such sums being the amount of damages awarded to them respectively by the commissioners. An order was made of that date, admitting the appellant to possession of the lands sought to be condemned in the condemnation proceedings. Respondents appealed from the award of the commissioners on the sixth day of July, 1910, and received the money which had been so deposited into court as damages. On the trial of the appeal in the district court, the jury returned a verdict assessing damages in favor of the respondents, as follows: To Clark, for the value of the land taken, $1,234; severance damages, $1,500, making a total of $2,734; and to Neible, for the value of the land taken, $903; severance damages, $1,200, making a total of $2,103.

The court rendered judgment in favor of the respondents respectively, crediting upon the verdict in favor of Clark, the said sum of $1,265, paid into court for her on June 11, 1910, and rendered judgment against the appellant for the balance of

$1,469, with interest at eight per cent per annum from June 11, 1910, the date of the order letting plaintiff into possession, to the date of judgment, to wit, April 19, 1916, which interest was computed at $835.35, making a total of $2,274.35. The court likewise credited upon the verdict in favor of Neible the said sum of $1,027.25, and Neible was awarded a judgment for the sum of $1,665.08, which includes interest computed upon the same basis.

It is conceded that the judgment erroneously allowed interest to the respondents in excess of that to which they were respectively entitled, as follows: To Clark, $117.60, and to Neible, $86.15.

Upon the trial, the appellant contended that because of the [1] building of a depot, stockyards, elevator and side-tracks, a portion of which was located on the land taken from Neible, and a portion of which was immediately north of and adjoining the Clark tract, certain special benefits had accrued to the respondents by reason of the construction, operation and maintenance of the road, because of which the tracts of land in question belonging to the respondents, in common with other tracts of land immediately in the neighborhood and adjacent to the road, had been increased in value, and that by reason of these facts a special benefit had accrued to these lands which, while more or less common to the other lands immediately in the vicinity, were of special benefit to respondents' lands. All the evidence tending to show benefits to the lands of respondents by reason of the construction, maintenance and operation of the road and these improvements, was either excluded by the court, stricken out after it was admitted, or, if not stricken out, taken from the jury by instructions. The principal point raised in the arguments upon the appeal is that this evidence should have been admitted to offset the damages sustained by respondents, and that because of its exclusion and the refusal of the court to instruct the jury that such deduction should be made, a new trial should be granted. No evidence was offered,

however, tending to show that by the construction of the road or its improvements any physical benefit to the lands ensued.

In *Yellowstone Park Ry. Co.* v. *Bridger Coal Co.,* 34 Mont. 545, 115 Am. St. Rep. 546, 9 Ann. Cas. 470, 87 Pac. 963, this question was suggested, but decision thereon was reserved for subsequent determination.

The statute (Rev. Codes, sec. 7341, subd. 3) provides that the method to be pursued in offsetting benefits to the land against the damages sustained is that the commissioners shall ascertain how much the land not to be taken will be benefited by the construction, and if the benefits shall be equal to the damage assessed, the owner shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value. Section 7344 provides that upon appeal being taken, the damages to which the owner may be entitled shall be reassessed upon the same principle as prescribed for assessment thereof by the commissioners.

There is much conflict in the authorities as to what enhancement, if any, in the value of property by reason of the construction of a railroad, may be considered as a benefit to offset damages, and also as to what is the meaning of the term "benefit" in the sense that such benefit may be deducted from the damages sustained. These are frequently, and quite generally, divided into three classes: (1) General benefits, or those arising from causes which affect the whole community and perhaps raise the value of land in an entire city or town; (2) neighborhood benefits, or those accruing to a certain definite district by reason of its nearness to the improvements; (3) peculiar benefits, or those affecting a particular estate by reason of its direct relation to the improvement. (10 R. C. L. 159.)

Many of the cases maintain the doctrine as contended for by appellant: That the damages sustained by the land owner may be offset by the enhanced value of his land, construction of

depots, *etc.*, at or near thereto, *etc.;* but even where allowances are made for differences in constitutional and statutory provisions as well as the peculiar facts involved in the various cases, they cannot all be harmonized. However, it may be stated as a general rule that general and neighborhood benefits resulting to the owner in common with others may not be set off against the damages to the owner, and that the benefits which may be deducted must be special or local, or such as result directly and peculiarly to the particular tract of which a part is taken. (15 Cyc. 770.)

The rule is also thus stated in Lewis on Eminent Domain, volume 2, third edition, section 703: "It seems to the writer that nothing should be regarded as a special benefit except (1) a physical improvement of the property in question by reason of the construction of the public work for which the part has been taken, when the manner of construction is made a part of the condemnation proceedings, so that the manner of construction cannot be changed to the detriment of the property without compensation, and (2) the conferring upon the property of some right or privilege, which becomes appurtenant thereto and renders the property more valuable, and which cannot be destroyed or impaired without compensation. Unless the benefits proposed to be set off are secured to the owner by a valid title, if he may be deprived of them without compensation, by a change of construction or by a change of use and occupation, then they should not be taken into consideration. An example of the first sort of benefit is where a railroad is so constructed through property as to afford it needed drainage, provided the mode of construction which produces the drainage is so incorporated into the condemnation proceedings as to be binding upon the company. But it is manifestly wrong to allow benefits because a railroad or a highway *might* be so constructed through a tract as to afford it valuable drainage, when there is no obligation so to construct it. An example of the second sort of benefit is where a street is laid out through a tract and the abutting property acquires the valuable ease-

ments of light, air and access over the street. When the street is once established, these easements cannot be impaired or destroyed without compensation. So in states where property abutting upon a railroad is entitled to switching facilities as a matter of right, if a railroad is constructed through a tract, the right to such facilities becomes appurtenant to the parts remaining, and if this fact renders them more valuable, that is a special benefit. But in such case, the amount of benefit should be estimated in view of the fact that the right may be lost by abandonment of the railroad. But if the owner cannot demand switching facilities as a matter of right, nothing should be allowed for the possibility of obtaining them as a matter of favor. A depot near property is not a special benefit because the owner has no right to its continuance as located, and because the right to be carried on the railroad or to send or receive freight over it is a personal right and not a right appurtenant to property." (See, also, 2 Elliott on Railroads, 2d ed., sec. 989; *Guyandot Valley Ry. Co.* v. *Buskirk,* 57 W. Va. 417, 110 Am. St. Rep. 785, 50 S. E. 521; *Heninger* v. *Peery,* 102 Va. 896, 47 S. E. 1013; *Lambeth* v. *Southern Power Co.,* 152 N. C. 371, 67 S. E. 921; *Whitman* v. *Boston & M. R. R.,* 89 Mass. (7 Allen) 313; *Cross* v. *Plymouth County,* 125 Mass. 557; *French* v. *Lowell,* 117 Mass. 363.)

In *Pochila* v. *Calvert etc. Ry. Co.,* 31 Tex. Civ. App. 398, 72 S. W. 255, the court said: "Not only was the property of plaintiff and other property in the city of Bryan increased in value by the construction of the railroad, but other causes conspired to increase the value of property from twenty to twenty-five per cent, according to the testmony of the witnesses. The plaintiff was entitled to the benefit of such increase in value, but the court gave it to the defendants. Another reason assigned by the court for denying the plaintiff the benefit of any increase in value that his property may have sustained was that the defendants had built a depot in the vicinity, which was of that peculiar and special benefit to the property which might be taken into consideration in offset in the estimation

of the damages. No such peculiar benefit was shown by the evidence. The benefit caused by the building of the depot affected all property alike in its neighborhood, and was not peculiar to the plaintiff's property. In order to be peculiar to a piece of property, the benefit must affect it directly, so as not to be shared by other property in the neighborhood, and the value of its use must be increased by improvement of the physical condition of the property." (See, also, *Washburn* v. *Milwaukee etc. Ry. Co.*, 59 Wis. 364, 18 N. W. 328, 333; *Kirby* v. *Panhandle & G. Ry. Co.*, 39 Tex. Civ. App. 252, 88 S. W. 281; *International & G. N. R. Co.* v. *Bell*, 62 Tex. Civ. 117, 130 S. W. 634; *Sloan* v. *New York E. R. Co.*, 63 Hun, 300, 17 N. Y. Supp. 769; *Illinois, I. & M. R. Co.* v. *Borms*, 219 Ill. 179, 76 N. E. 149; *Hempstead* v. *Salt Lake City*, 32 Utah, 261, 90 Pac. 397; *Little Rock etc. Ry. Co.* v. *Allister*, 68 Ark. 600, 60 S. W. 953.)

In *Roberts* v. *Board of Brown County Commrs.*, 21 Kan. 247, the court said: "A benefit must be founded upon something which increases the actual or usable value of the land, as well as the market or salable value thereof, and not such as increases merely the market or salable value alone. Increased value founded upon merely increased facilities for travel and transportation by the public in general is not the kind of increased value which may be taken into consideration in reducing the damages to be awarded to the land owner. That kind of increased value is too indirect and too remote from the original cause. * * * Besides, it is a kind of increased value which is common to the whole community in general, and to each individual thereof to a greater or less extent; and it has no relation to the use of the land as land, but it is merely an increased market value founded upon the extraneous circumstances of increased facilities for public travel and transportation." And the general enhancement of values in land in the vicinity because of the construction of the road is not a proper element of benefit to be allowed. (*Mahaffey* v. *Beech Creek R. R.*, 163 Pa. St. 158, 29 Atl. 881; *Shimer* v. *Easton Ry. Co.*, 205 Pa.

St. 648, 55 Atl. 769; *Eastern Texas R. Co.* v. *Eddings,* 30 Tex. Civ. App. 170, 70 S. W. 98; *St. Louis, M. & S. E. R. Co.* v.' *Continental Brick Co.,* 198 Mo. 698, 96 S. W. 1011; *Williamson* v. *Read,* 106 Va. 453, 56 S. E. 174; *Crystal City & U. R. Co.* v. *Boothe* (Tex. Civ.), 126 S. W. 700; *Routh* v. *Texas Traction Co.* (Tex. Civ.), 148 S. W. 1152; *Buckhannon & N. R. Co.* v. *Great Scott Coal & C. Co.,* 75 W. Va. 423, 83 S. E. 1031; *Pittsburgh B. & B. R. Co.* v. *McCloskey,* 110 Pa. St. 436, 1 Atl. 555; *Mississippi Ry. Co.* v. *McDonald,* 59 Tenn. (Heisk.) 54.)

Further, under section 7342, *supra,* damages are to be [2] computed as of the date of the summons in the condemnation proceedings. (*Butte Electric Ry. Co.* v. *Mathews,* 34 Mont. 487, 87 Pac. 460; *Montana Ry. Co.* v. *Freeser,* 29 Mont. 210, 74 Pac. 407.)

As said in *Guyandot Valley Ry. Co.* v. *Buskirk, supra:* "It must be perfectly manifest that in every case of a projected railroad, there is an appreciation in values of real estate all along the proposed line before any condemnation proceedings are instituted, and since the market value at or near the date of the institution of such proceedings is the measure of compensation, the enhancement due to the prospect of the construction of the railroad must have entered into the market value of the land, and the land owner obtains it because he takes the market value at that time, not at a date prior to the announcement of the intent to construct the road."

*Mantorville Ry. etc. Co.* v. *Slingerland,* 101 Minn. 488, 118 Am. St. Rep. 647, 11 L. R. A. (n. s.) 277, 112 N. W. 1033, is a very illustrative case, in which the authorities from many jurisdictions have been gathered and where the rules prevailing in such jurisdictions are fully commented upon and distinguished. There it was contended by the railroad company that the construction of the road would make accessible certain quarries belonging to the land owner, which would be of considerable value because of transportation facilities, whereas, without the road, they were of little or no value. The court said: "In the case at bar the possibility or the probability that the

railroad company would construct or maintain stub-tracks or permit switch connections whereby defendant's quarries would make his land valuable is not a special benefit to be offset against the value of the part of his land taken by the railway company or damages to the remainder. That benefit accrued to the community in general. It was *such a benefit as defendant might have received if the railroad had been constructed through the country, and had not crossed his farm.* * * * If, for example, the railroad company had run along the boundary line of his neighbor's land, that neighbor would have had identical advantages and would have paid nothing. The defendant is not required to pay in part for the same thing which his neighbor received *gratis.* The benefit was not direct nor local. The construction of the road did not physically alter defendant's lands to his advantage. It did not open a quarry, as by making a cut and exposing the stone. In this connection it is to be noted that this entire section of the state is underlaid with limestone, whose value is largely determined by its quality. A quarry is not so common as a field, but is of so frequent occurrence that the benefit of transportation facilities accrues to property owners quite generally and is highly uncertain, if not speculative. The benefit was contingent, and dependent upon the right of the railroad company to permit or refuse direct connection with it. Indeed, it might never accrue in fact. If it existed at all, the benefit was constructive, not actual. Any use the land owner might make of any spur-track or switch connection would be merely permissive, and subject to the paramount right of the railroad company. * * * It would be an unjust discrimination against this land owner to require him to pay for the privilege of paying the plaintiff for the transportation of his freight. The trial court was clearly right.''

Common experience indicates that the line, side-tracks, switches, elevators, *etc.,* are extended or erected in certain places, not with the view of benefiting adjoining land owners,

but because of conditions which lead the appropriator to deem the site or sites selected as affording it desirable locations, primarily with the view of benefits to itself, financially and otherwise. The railway company may not carry on its business without these adjuncts, the permanence of the location and continued use of which are matters resting almost entirely in its hands. Its appropriation is for establishing and maintaining a complete line of railway, which means more than the mere construction of a grade, with ties and rails laid thereon. To so carry on its business, it must have depots, side-tracks, *etc.*, at intervals for its own benefit, and the incidental benefit of the public, for which benefit the general public contributes only by its use of the facilities offered. We do not concur in the reasoning of those cases which maintain that the land owner whose land is so appropriated must suffer a diminution in the damages he has sustained by reason of the benefits which he receives only as a member of the general public.

The statute is coercive, that is: Upon the necessity of the appropriation being shown, the land owner may be compelled to give up his lands for the superior use, whether he consents or not. To further hold that, in addition to yielding his land, he must be charged by the appropriator for benefits not peculiar to himself, but common to the general public, would, in effect, be taking his property without due process of law, and the same in effect, as compelling him by judicial mandate to donate such sum for the construction of the road, or, stated in another manner, to deduct that much from the amount which is found necessary to compensate him, in return for which he receives only that which is common to all who reside in the vicinity. As stated in *Guinn* v. *Ohio River R.*, 46 W. Va. 151, 157, 76 Am. St. Rep. 806, 33 S. E. 87, this in effect is requiring one to pay for another's benefit.

The trial court, therefore, committed no error in excluding appellant's evidence as to enhancement of value of the land by reason of the construction of the road and the improvements in question, as they were not special benefits to re-

spondents' lands, nor entitled to be set off against respondents' damages.

Counsel cites the case of *Eby* v. *City of Lewistown*, 55 Mont. 113, 173 Pac. 1163, but the benefits involved in that case are of a different nature from those herein.

In the judgment, the court, after deducting from the amount **[3]** awarded each respondent the sum paid into court at the time appellant was let into possession of the lands, computed interest upon the balance from that date to the date of entry of judgment, and, as to each respondent, added the interest to such balance, making a total judgment for Clark of $2,274.35, and for Neible in the sum of $1,665.08. It is contended by appellant that the judgment should have merely provided that appellant should pay respondents the difference between the amounts awarded them and the amounts paid into court, with interest upon such sums from the date appellant was let into possession of the lands until paid, and that by the method adopted by the court, the interest is compounded.

In *Helena Power Transmission Co.* v. *Spratt*, 40 Mont. 254, 106 Pac. 5, the judgment provided for interest in the manner contended for by appellant. But the question here involved was not then raised nor considered.

In *Butte E. Ry. Co.* v. *Mathews, supra,* the court having instructed the jury that they might allow interest upon the amount awarded the plaintiff, a general verdict was rendered, silent as to interest. The court, therefore, assumed that interest had been allowed by the jury upon the amount awarded, refused to award interest additionally, and judgment was entered for the amount of the verdict. While the question of interest was involved upon the appeal, the question here involved was not discussed. The statute provides: "Sec. 5214. Interest is payable on judgments recoverable in the courts of this state, at the rate of eight per cent (8%) per annum, and no greater rate, but such interest must not be compounded in any manner or form."

When a debt becomes merged in a judgment, there can be no question of the right to enter the judgment for the amount thereof and accrued interest, the whole to bear interest thereafter at eight per cent per annum. (Rev. Codes, sec. 7173; *Stanford* v. *Coram,* 26 Mont. 285, 67 Pac. 1005; *Toole* v. *Weirick,* 39 Mont. 359, 133 Am. St. Rep. 576, 102 Pac. 590; *State ex rel. Dolenty* v. *Reece,* 43 Mont. 291, 115 Pac. 681.)

Clark, husband of the respondent Clark, had testified that [4] his wife's land was worth from $110 to $120 per acre. Upon redirect examination he was asked, over appellant's objection, if any offers had been made for the purchase of the land, to which he answered that he had been offered $125 per acre. Error is assigned because of the court's permitting this question. That this ruling was erroneous is without question. (*Yellowstone Park Ry. Co.* v. *Bridger Coal Co., supra; Helena Power Transmission Co.* v. *McLean,* 38 Mont. 388, 99 Pac. 1061.) However, by the court's Instruction No. 6, the jury were told that they were "not to consider any statement in evidence, if any there be, of offers made and refused at any time," *etc.* It is apparent that the jury disregarded the evidence as to the offer. While it would have been better practice to specifically refer to the evidence in question, there having been no other evidence of a similar nature in the record, the jury must have understood the instruction as applying to Judge Clark's testimony.

There are some forty-two specifications of error assigned. While we have not discussed each separately, all have been considered, and we find nothing prejudicial to appellant's rights, except as hereinafter mentioned.

It being conceded that the judgment in favor of respondent Clark is $117.60 in excess of that to which she is entitled, and in favor of respondent Neible $86.15 in excess of that to which he is entitled, the judgment should be modified accordingly.

The order overruling the motion for a new trial is affirmed, and the cause is remanded to the district court, with direction to modify the judgment as herein indicated, and when so modi-

fied: it will stand affirmed, each party to pay his own costs of the appeal.

*Remanded with directions.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLO-WAY, MATTHEWS and COOPER concur.